CC-95-137                                                    1

En el Tribunal Supremo de Puerto Rico

| Felícita García, et. als. | |
|---|---|
| Demandantes-Peticionarios | Certiorari |
| V. | 98TSPR131 |
| Estado Libre Asociado de Puerto Rico | |
| Demandados-Recurridos | |

Número del Caso: CC-95-137

Abogados de la parte Peticionaria: Lcda. Rina Biaggi García
                                    Lcda. Iris L. Cancio González
                                    Lcdo. Eric Rivera Cruz

Abogados de la Parte Recurrida:     Hon. Carlos Lugo Fiol
                                    Procurador General
                                    Lcda. Carmen a. Riera Cintrón
                                    Procuradora General Auxiliar


Tribunal de Instancia: Superior de Carolina

Juez del Tribunal de Primera Instancia: Hon. C. Heydee Pagani Padró

Tribunal de Circuito de Apelaciones: Circuito Regional VII

Juez Ponente: Hon. Martínez Torres

Fecha: 10/13/1998

Materia: Daños y Perjuicios

    Este documento constituye un documento oficial del Tribunal
    Supremo que está sujeto a los cambios y correciones del
    proceso de compilación y publicación oficial de las
    decisiones del Tribunal. Su distribución electrónica se hace
    como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


a García, et als.

mandantes-peticionarios


   v.                           CC-95-137


Libre Asociado, et als.

mandados-recurridos


 del Tribunal emitida por la Juez Asociada señora Naveira de Rodón


        San Juan, Puerto Rico, a 13 de octubre de 1998

        Felícita  García  y  Arcadio  Meléndez  Rivera,  por  sí  y  en
   representación  de  sus  hijas  menores  de  edad  (en  adelante  peticionarios),
   presentaron  una  demanda  por  daños  y  perjuicios  a  raíz  de  la  muerte  de
   otra  de  sus  hijas,  Lourdes  Meléndez  García.   Demandaron  al  Estado  Libre
   Asociado  de  Puerto  Rico  (en  adelante  E.L.A.);  al  policía  Adrián  Rivas
   Rodríguez,  compañero  consensual  de  la  señora  Meléndez  García;  al  Teniente
   Horwen  Cepeda;  al  Sargento  Félix  Cancel  y  al  Teniente  Néstor  Rodríguez,
   también  policías.[1]   Los  últimos  tres  fueron  demandados  tanto  en  su
   carácter  oficial  como  en  su  carácter  personal.   El  Estado  asumió  su
   representación

---

[1]  Además,  se  incluyó  como  demandado  al  entonces  Superintendente  de  la
Policía  Carlos  López  Feliciano  en  su  capacidad  oficial  y  personal.

legal al amparo del Art. 12 de la Ley Núm. 104 de 29 de junio de 1955 (conocida como la "Ley de Reclamaciones y Demandas contra el Estado"), según éste fuera adicionado por la Ley Núm. 9 de 26 de noviembre de 1975, según enmendado, 32 L.P.R.A. sec. 3085.[2]  A continuación relatamos los hechos que dieron lugar a dicha demanda.

I

La señora Meléndez García sufrió múltiples incidentes de agresiones físicas, insultos y acaloradas discusiones mientras convivió con el policía Adrián Rivas en el barrio Cubuy de Canóvanas.  El 12 de diciembre de 1988, una vecina decidió reportar una grave discusión entre la señora Meléndez García y el policía Rivas.  Cuando los oficiales de la Policía se presentaron a la residencia, se limitaron a platicar con Rivas, su colega, obviando interrogar a la víctima e indagar si ella había sufrido algún daño corporal.  Ese mismo día, la señora Meléndez García acudió al

_____

[2] Dicho Artículo dispone lo siguiente:

> Todo funcionario, ex funcionario, empleado o ex empleado del Estado Libre Asociado de Puerto Rico <u>que sea demandado en daños y perjuicios en su carácter personal, cuando la causa de acción se base en alegadas violaciones a los derechos civiles del demandante, debido a actos u omisiones incurridos de buena fe, en el curso de su trabajo y dentro del marco de sus funciones, podrá solicitar que el Estado Libre Asociado de Puerto Rico le provea representación legal y posteriormente asuma el pago de cualquier sentencia que pueda recaer sobre su persona.</u>  Los Directores Ejecutivos, ex Directores Ejecutivos, los miembros y ex miembros de las Juntas de Gobierno de las corporaciones públicas e instrumentalidades del Gobierno, los alcaldes y ex alcaldes y los funcionarios y ex funcionarios de los municipios estarán cubiertos por lo aquí dispuesto, excepto que en lo relativo al pago de sentencias se regirán por lo provisto en la sec. 3092 de este título. Las acciones que puedan incoarse bajo las disposiciones de las secs. 3077 et seq. de este título no estarán cubiertas por lo dispuesto en esta sección.
>
> Asimismo, lo aquí provisto no debe entenderse bajo ningún concepto como que convierte al Estado en asegurador de los servidores públicos antes señalados, ni que constituye una renuncia de la inmunidad soberana del Estado Libre Asociado.  (Enfasis nuestro.)

Se debe destacar que la Ley Núm. 9 le añadió a la Ley Núm. 104 los Arts. 12 al 19, excepto los Arts. 14A y 19A, que fueron incorporados posteriormente.

cuartel de la Policía en Cubuy para querellarse de la agresión. El sargento de turno, el codemandado Félix Cancel, pudo observar los golpes en el rostro de la víctima así como su estado de embarazo. Sin embargo, no le dio curso a la querella presentada, como era su deber. De igual forma incumplió con su deber el teniente codemandado Néstor Rodríguez, ya que por ser pariente de Rivas no atendió el caso con la seriedad que ameritaba. Cuando el tercer codemandado, el Teniente Horwen Cepeda, inquirió sobre la querella, fue informado que la misma se había paralizado, actuación con la que estuvo de acuerdo.

Seis (6) días después de querellarse, y a pesar de las protestas de sus familiares, la señora Meléndez García regresó a convivir con Rivas. En la tarde del 21 de diciembre de 1988, su vecina escuchó una fuerte detonación y vio a Rivas salir de la casa junto a la señora Meléndez García y la hija de ésta en su primer matrimonio, Shirley Ann. Rivas cargaba en brazos a la señora Meléndez García, quien tenía la blusa ensangrentada, lloraba y pedía angustiada que salvaran a su bebé. Mientras todo esto acontecía, Shirley Ann, quien apenas tenía dos (2) años y medio de edad, observaba la escena. La señora Meléndez García y su feto de cinco meses murieron como consecuencia de la herida de bala que le hiciera el policía Rivas con su arma de reglamento, una Smith & Wesson, calibre 357.

Basándose en la prueba desfilada, el foro de instancia determinó lo siguiente:

> El Tribunal concluye que la causa de la muerte de Lourdes Meléndez es una compuesta por la acción ilícita de Rivas al disparar el revólver y las omisiones negligentes y descuidadas de miembros de la Policía de Puerto Rico, quienes están obligados a proveer seguridad, orden y protección a los ciudadanos. Ciertamente, del acto criminal de Rivas no responde el Estado Libre Asociado de Puerto Rico en virtud de lo dispuesto en el Art. (6)(d) de la Ley Núm. 104 de 29 de junio de 1955 (32 L.P.R.A. sec. 3081(D), la cual expresamente excluye la acción civil en daños y perjuicios por actos intencionales de funcionarios constitutivos de agresión u otro delito contra la persona. Véase, Galarza Soto v. E.L.A., 109 D.P.R. 179 (1979); Negrón Orozco v. Rivera, 113 D.P.R. 712 (1983). El Estado responde por las omisiones negligentes separadas y distintas de Cancel, Rodríguez y Cepeda, quienes incumplieron con el deber que les imponía la ley y faltaron en prever el daño

para evitarlo. La omisión de éstos al no atender la denuncia, no iniciar una investigación y no tomar medidas afirmativas para proteger la vida de Lourdes y no despojar a Rivas del arma de reglamento, aumentó considerablemente el riesgo de daño a Lourdes.

Rivas, no adujo en su favor ninguna defensa y la adjudicación en su contra es en rebeldía. La responsabilidad de Rivas, la cual surge claramente de la relación de hechos, se rige por el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Rivas, está obligado a indemnizar a cada uno de los demandantes por los daños y perjuicios propios sufridos por éstos a causa de la muerte ilegal de Lourdes Meléndez.

En cuanto al entonces Superintendente de la Policía Carlos López Feliciano, procede la desestimación de la demanda. De la prueba pericial y testifical aportada no surge que éste hubiese tenido conocimiento previo de las actuaciones de Rivas ni de las actuaciones negligentes de sus subalternos Cancel, Rodríguez y Cepeda.

La prueba fue frágil e insuficiente para demostrar que Carlos López Feliciano incumpliera con los deberes y obligaciones de su cargo, no supervisara a sus subalternos o en algún otro modo interviniera la decisión de no procesar la querella de violencia doméstica. Sentencia de 19 de junio de 1994 del entonces Tribunal Superior, Sala de Carolina, págs. 32-33.


El foro de instancia determinó que el E.L.A. y Adrián Rivas responden solidariamente del daño ocasionado, y los condenó al pago de seiscientos sesenta mil dólares ($660,000). La sentencia limitó la solidaridad del Estado al máximo de responsabilidad dispuesto por ley, esto es, ciento cincuenta mil dólares ($150,000),[3] y distribuyó esa cantidad a prorrata entre los peticionarios.[4]

---

[3] El Art. 2 de la Ley Núm. 104, 32 L.P.R.A. sec. 3077, establece en lo pertinente que:

Se autoriza demandar al Estado Libre Asociado de Puerto Rico ante el Tribunal de Primera Instancia de Puerto Rico por las siguientes causas:

(a) Acciones por daños y perjuicios a la persona o a la propiedad hasta la suma de setenta y cinco mil (75,000) dólares causados por acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona actuando en capacidad oficial y dentro del marco de su función, cargo o empleo interviniendo culpa o negligencia. Cuando por tal acción u omisión se causaren daños y perjuicios a más de una persona, o cuando sean varias las causas de acción a que tenga derecho un solo perjudicado, la indemnización por todos los daños y

Luego de advenir final y firme esta sentencia sin que fuese apelada, y que se tratara de cobrar extrajudicialmente la misma, los peticionarios acudieron al Tribunal de Primera Instancia, Sala Superior de Carolina, para que dicho tribunal le ordenara al E.L.A. a satisfacer la totalidad de la sentencia, fundamentándose en la solidaridad impuesta. Mediante resolución de 28 de febrero de 1995, el foro de instancia declaró sin lugar dicha solicitud. Los peticionarios presentaron una moción de reconsideración, la cual fue denegada. Inconformes, acudieron al Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito) y plantearon que, como responsable solidario, el E.L.A. tiene que satisfacer la totalidad de la sentencia en el caso de autos. El Tribunal de Circuito emitió una resolución denegando la solicitud de certiorari. Los peticionarios oportunamente sometieron una moción de reconsideración,

---

perjuicios que causare dicha acción u omisión no podrá exceder de la suma de ciento cincuenta mil (150,000) dólares. Si de las conclusiones del tribunal surgiere que la suma de los daños causados a cada una de las personas excede de ciento cincuenta mil (150,000) dólares, el tribunal procederá a distribuir dicha suma entre los demandantes, a prorrata, tomando como base los daños sufridos por cada uno. Cuando se radique [sic] una acción contra el Estado por daños y perjuicios a la persona o propiedad, el tribunal ordenará, mediante la publicación de edictos en un periódico de circulación general, que se notifique a todas las personas que pudieran tener interés común, que deberán comparecer ante el tribunal, en la fecha dispuesta en los edictos, para que sean acumuladas a los fines de proceder a distribuir la cantidad de ciento cincuenta mil (150,000) dólares entre los demandantes, según se provee en las secs. 3077 et seq. de este título. (Enfasis nuestro.)

[4] El policía Adrián Rivas se declaró culpable de homicidio el 18 de enero de 1990. Como resultado de una alegación preacordada, el antiguo Tribunal Superior lo sentenció a seis (6) años de cárcel y le concedió el beneficio de una sentencia suspendida.

Por otro lado, el 19 de junio de 1991, ya instado el pleito, pero antes que recayera sentencia, el codemandante Arcadio Meléndez Rivera, padre de Lourdes Meléndez García, se suicidó.

Conviene señalar, además, que por los mismos hechos que dieron lugar a este pleito, los peticionarios habían presentado una demanda en el Tribunal Federal para el Distrito de Puerto Rico por violación de derechos civiles. Según surge de la sentencia del foro de instancia, el tribunal federal desestimó la demanda el 14 de agosto de 1991 por falta de una actuación so color de autoridad. A su juicio, no existía un deber de proteger a Lourdes Meléndez García de los actos violentos de Rivas, quien en ese momento era un actor privado.

la cual también fue denegada.  Inconformes, estos presentaron una petición de certiorari ante este Tribunal señalando la comisión de dos errores, a saber:[5]

> Erró el Tribunal de Circuito de Apelaciones al determinar que el Tribunal de Primera Instancia no adjudicó responsabilidad a los tres policías codemandados, Sargento Félix Cancel, Teniente Horwen Cepeda y Sargento Néstor Rodríguez en su capacidad personal.
>
> Erró el Tribunal de Circuito de Apelaciones al determinar que los policías cocausantes no son responsables del exceso de la sentencia, como cuestión de derecho extendiéndole una inmunidad absoluta a los funcionarios [sic] y contraviniendo la propia Ley Núm. 9[.]

Decidimos revisar y expedimos el auto.

## II

Por estar íntimamente relacionados, discutiremos conjuntamente ambos errores.  En primer lugar, los peticionarios alegan que el Tribunal de Circuito incidió al concluir que el foro de instancia no encontró responsables a los funcionarios antes mencionados en su carácter personal.  Añaden que en esa circunstancia el Estado viene obligado a pagar en exceso del límite dispuesto por la Ley Núm. 104.  Indican, además, que el antiguo Tribunal Superior no tenía que decir específicamente en su sentencia que los funcionarios son responsables en su carácter personal, pues esto se sobreentiende ya que de otra forma no hubiese determinado responsabilidad del Estado bajo el Artículo 1803 del Código Civil, según enmendado, 31 L.P.R.A. sec. 5142, y la Ley Núm. 104, hasta el límite de ciento cincuenta mil dólares ($150,000).

Los peticionarios también alegan que en virtud de la solidaridad impuesta, tienen derecho a cobrar la totalidad de la sentencia de los supervisores del policía Adrián Rivas.  Como estos no pueden pagar, señalan que le toca entonces al E.L.A. satisfacer la sentencia.  Además, sostienen que bajo las disposiciones de la Ley Núm. 9, cuando el Estado

---

[5] En su alegato, la parte peticionaria señaló la comisión de un error adicional: "Erró el Tribunal de Circuito de Apelaciones al no ordenar al E.L.A. pagar la totalidad de la sentencia".  No consideraremos este error presentado tardíamente, aunque sí discutiremos lo que de éste se relacione con los dos errores señalados y haya sido discutido

asume la representación legal de un funcionario, también asume el pago de la totalidad de la sentencia que recaiga en su día.  No les asiste la razón.  Veamos.

**III**

Para resolver el presente recurso, es necesario que interpretemos la Ley Núm. 104, con las modificaciones introducidas por la Ley Núm. 9.  En cuanto a la interpretación de las leyes, el Código Civil dispone que "[l]as leyes que se refieren a la misma materia o cuyo objeto sea el mismo, deben ser interpretadas refiriendo las unas a las otras...".  Art. 18 del Código Civil, 31 L.P.R.A. sec. 18.  Asimismo, hemos resuelto que al interpretar una ley, se debe tener en cuenta cuál fue el propósito del legislador al aprobar la misma.  La interpretación que de la ley se haga tiene que asegurar que el resultado querido se cumpla.  González Pérez v. E.L.A., Op. de 26 de abril de 1995, 138 D.P.R. ___ (1995), 95 JTS 52; Vázquez v. A.R.P.E., 128 D.P.R. 513 (1991).  "[A]l interpretar las diferentes secciones, artículos y apartados de una ley, y las diversas leyes relacionadas entre sí por su objetivo o propósito, debe hacerse conjuntamente, refiriéndose a las unas con las otras, como un todo, buscando la intención legislativa".  Ojeda Ojeda v. El Vocero, Inc., Op. de 26 de octubre de 1994, 137 D.P.R. ___ (1994), 94 JTS 131, pág. 334, y casos allí citados.

La Ley Núm. 104 constituye una renuncia amplia pero condicionada por parte del Estado a la protección que le brinda la inmunidad del soberano.  Defendini Collazo v. E.L.A., Op. de 15 de julio de 1993, 134 D.P.R. ___ (1993), 93 JTS 119, pág. 11003.  La misma contiene límites de cuantía, suma máxima por la cual va a responder el Estado.  Para que prospere una causa de acción bajo esta ley, es necesario que se demande al E.L.A. en daños y perjuicios cuando los mismos fueron causados por funcionarios o empleados públicos actuando dentro del marco de sus funciones, cargo o empleo.  32 L.P.R.A. sec. 3077(a). No siendo el Estado una persona

---

oportunamente en la petición de certiorari.

natural, solo puede actuar a través de sus funcionarios y empleados y, por ende, su responsabilidad es una vicaria. Defendini Collazo v. E.L.A., supra.[6] Es decir, mediante esta ley se puede demandar al E.L.A. y a un funcionario o empleado público, cuando éste actúa negligentemente u omite actuar según su deber dentro del marco de las funciones propias de su cargo o empleo.[7]

También hemos expresado que, bajo la Ley Núm. 104, una vez se recobra del Estado, la parte demandante no puede recobrar del empleado y viceversa. De Paz Lisk v. Aponte Roque, 124 D.P.R. 472, 493 (1989); Vda. de Valentín v. E.L.A., 84 D.P.R. 112, 120 (1961). Esto se desprende del Art. 8 de dicha ley, que dispone lo siguiente:[8]

---

[6] En Leyva v. Aristud, Op. de 19 de enero de 1993, 132 D.P.R. ___ (1993), 93 JTS 5, determinamos en qué situaciones el E.L.A. está sujeto a responsabilidad:

> (1) cuando el empleado, agente o funcionario causa un daño por su exclusiva culpa o negligencia, mientras desempeña sus funciones y actúa en su capacidad oficial; (2) cuando el empleado, agente o funcionario causa un daño mientras desempeña sus funciones y actúa en su capacidad oficial por una actuación preponderantemente negligente aun cuando dicha conducta tenga algunos elementos intencionales. Véase, Galarza Soto v. E.L.A., 109 D.P.R. 179 (1979); Morales Garay v. Roldán Coss, 110 D.P.R. 701 (1981); (3) cuando, a pesar de que el daño fue directamente producido por un acto enteramente intencional de los cuales no responde el Estado, hubo otros actos negligentes separados de c[oc]ausantes del daño por los cuales sí debe responder el Estado. Véase, Negrón v. Orozco Rivera, 113 D.P.R. 712 (1983); Hernández v. E.L.A., 116 D.P.R. 293 (1985); y (4) cuando el Estado a través de sus agentes es negligente por omisión al incumplir con un deber impuesto por las leyes y la Constitución. (Énfasis en el original.) Íd., pág. 10308.

[7] Se ha indicado que si una acción se entabla contra el Estado, a pesar de que solo se mencionen a los funcionarios o empleados públicos como demandados, esta acción está cubierta por la inmunidad del soberano. Esto es así porque se ha reconocido que cuando se demanda a un funcionario o empleado público solamente en su capacidad oficial es igual que demandar al Estado. 1 J.D. Lee y Barry A. Lindahl, Modern Tort Law: Liability & Litigation 611 (Ed. rev. 1994). "The distinction between official-capacity and individual capacity suits is a significant one. [In Hafer v. Melo, 502 U.S. 21 (1991), ... the Supreme] Court reemphasized that a suit against a state official in her official capacity is to be treated as a suit against the state. However, personal-capacity suits 'seek to impose individual liability upon a government officer for actions taken under color of state law.'..." Id, pág. 196 (Supl. 1997).

[8] La "Federal Tort Claims Act" tiene una disposición similar, la cual establece que la sentencia que se dicte en su día impedirá cualquier otra acción del demandante contra el empleado gubernamental cuya actuación u omisión dio lugar a la reclamación, basado en la misma materia. 28 U.S.C.A. sec. 2676. Es decir, una vez el demandante recobre del gobierno de Estados Unidos, el empleado queda automáticamente protegido. Prosser y Keeton, The Law of Torts 1068 (5ta ed. 1984).

La sentencia que se dicte en cualquier acción autorizada por las secs. 3077 et seq. de este título impedirá toda otra acción por parte del reclamante, por razón de la misma cuestión o materia, contra el funcionario, agente o empleado cuyo acto u omisión dio origen a la acción; y la sentencia contra el funcionario, agente o empleado impedirá igualmente toda acción contra el Estado.  32 L.P.R.A. sec. 3083.

Sin embargo, no existe ningún impedimento para que la demanda se inste directamente contra el funcionario o empleado o, de forma alternativa, en contra del E.L.A. y del funcionario o empleado público, aunque no puede haber acumulación de indemnizaciones. González Pérez v. E.L.A., supra, pág. 842; De Paz Lisk v. Aponte Roque, supra.  Tampoco "existe disposición alguna en la Ley Núm. 104 que impida imponer responsabilidad solidaria al Estado hasta el máximo permitido por dicho estatuto e imponer el monto restante de la indemnización concedida exclusivamente al c[oc]ausante del daño cuando la actuación de éste no está enmarcada dentro de una relación de agencia o empleo con el Estado". González Pérez v. E.L.A., supra.

Pasemos ahora a considerar la Ley Núm. 9 específicamente.


IV

La Ley Núm. 9 establece que un funcionario o empleado del E.L.A. que sea demandado en daños y perjuicios en su carácter personal por actos u omisiones incurridos dentro del marco de sus funciones que constituyan violaciones a los derechos civiles del demandante y que no tenga disponibles los beneficios de la Ley Núm. 104, puede solicitar que el Estado le provea representación legal y pague la sentencia que en su día pueda recaer.  Véase, Art. 12 de la Ley Núm. 104, según enmendado por la Sec. 1 de la Ley Núm. 9.  Como se puede observar, la Ley Núm. 9 tiene el propósito de complementar la Ley Núm. 104, no sustituirla.[9]

---

[9] Se debe señalar que uno de los propósitos seguidos por el legislador al promulgar la Ley Núm. 9 fue el proteger a los funcionarios o empleados públicos que son demandados en el foro federal en su capacidad personal.  Por ejemplo, esta situación ocurre cuando los funcionarios o empleados públicos actúan so color de autoridad estatal y violan los derechos civiles de una o varias personas.  Véase 42 U.S.C.A. sec. 1983.  En este caso, la Enmienda XI de la Constitución de Estados Unidos prohibe que se demande a un Estado en los tribunales

En su Exposición de Motivos se expresa lo siguiente:

> [Las] demandas, en ocasiones, pueden radicarse [sic] no solamente contra instrumentalidades del Gobierno sino también contra funcionarios gubernamentales en su carácter personal, aun cuando las acciones motivo de la demanda se lleven a cabo en el estricto y legal cumplimiento de las obligaciones que le imponen las leyes que tienen la obligación de administrar.  El Estado Libre Asociado de Puerto Rico reconoce que es de su obligación el asumir cualquier responsabilidad de carácter económico con motivo de indemnizaciones impuestas por un Tribunal con jurisdicción a cualquier funcionario o empleado público cuando esto ocurra como consecuencia de una acción administrativa tomada de buena fe, dentro de las disposiciones legales vigentes y dentro del marco de sus funciones.

> ....

> ...Con la adopción de esta medida se asume una responsabilidad ineludible para la protección de la integridad del servicio público.

El Informe de las Comisiones de lo Jurídico Civil y de Derechos Civiles y Servicio Público, remitido al Senado de Puerto Rico en octubre de 1975, consigna que el alcance y propósito de esta ley es proteger a los funcionarios y empleados públicos no cubiertos por la Ley Núm. 104, que son demandados en su carácter personal por actos u omisiones realizados en su capacidad oficial que constituyan violaciones a los derechos civiles del demandante.  Esta ley surge para llenar el vacío que existía en cuanto a la protección que se le ofrecía a los funcionarios o empleados públicos, al desarrollarse la práctica de demandar a estos en el foro federal donde el Estado no puede ser demandado.

Por otro lado, el Informe Conjunto de las Comisiones de Gobierno y de lo Jurídico Civil enviado a la Cámara de Representantes el 6 de noviembre de 1975, expresa que la Ley Núm. 9 "no constituirá una compensación adicional para los servidores públicos que aquí queden

---

federales.  Se ha resuelto que esta protección constitucional se extiende al Estado Libre Asociado de Puerto Rico.  Font v. Dapena Yordan, 763 F.Supp. 680 (1991).  Aparte de esto, en la definición de lo que es una "persona" para efectos de la Sec. 1983 no se incluyen los estados, territorios ni el E.L.A.  Will v. Michigan Dept. of State Police, 491 U.S. 58 (1988); Sheldon H. Nahmod, Civil Rights and Civil Liberties Litigation: The Law of Section 1983, sec. 1.06, págs. 13-14.  Si la Ley Núm. 9 no existiera, los funcionarios o empleados públicos estarían desprovistos de toda protección cuando son demandados en los foros federales por actuaciones dentro del marco de sus funciones

protegidos. Al respecto, nos señala el Secretario de Justicia, que dicha erogación no debe entenderse como un pago por servicios rendidos y sí como un gasto necesario para poder reclutar, retener y mantener una administración pública eficiente que sirva adecuadamente a los intereses del pueblo de Puerto Rico". Pág. 11 del Informe a la Cámara. Asimismo, indica que el Secretario de Justicia, con el asesoramiento de otros funcionarios, determinará en qué casos el E.L.A. asumirá la representación legal y el pago de la totalidad de la sentencia. Pág. 8 del Informe a la Cámara. Este lenguaje se recoge en la Ley Núm. 9, cuando dispone expresamente que el Secretario de Justicia determinará en qué casos el E.L.A. "asumirá la representación legal y posteriormente, considerando los hechos que determine probados el tribunal o que surjan de la prueba desfilada, decidirá si procede el pago de la totalidad de la sentencia que le fuere impuesta a los funcionarios, ex funcionarios, empleados o ex empleados públicos demandados". (Énfasis nuestro.) 32 L.P.R.A. sec. 3087.

Para implantar esta ley, el Secretario de Justicia promulgó el "Reglamento sobre representación legal y pago de sentencia bajo la Ley de Reclamaciones y Demandas contra el Estado", Reglamento Núm. 4071, aprobado el 8 de septiembre de 1989 (en adelante el Reglamento). El mismo dispone el trámite a seguir cuando un funcionario o empleado público que se ha acogido a los beneficios de la Ley Núm. 9 desea que el Estado pague la sentencia que haya recaído en su contra. En específico, establece que dicho empleado "deberá presentarle al Secretario [de Justicia una] copia de la sentencia o un informe en el que se relacionen de forma sucinta y fehaciente la prueba desfilada y admitida cuando no haya determinaciones de hecho del tribunal". Art. X(A) del Reglamento. También dispone que "el Secretario decidirá si corresponde pagar la sentencia de acuerdo a la Ley y este Reglamento e inmediatamente notificará dicha decisión al beneficiario".[10] (Énfasis nuestro.) Art.

---

oficiales.

[10] El Reglamento define beneficiario como el "funcionario, su cónyuge o

X(B) del Reglamento. Por otro lado, si el Secretario determina que no procede el pago de la sentencia, el Reglamento establece el procedimiento que debe seguir el funcionario o empleado público para revisar dicha determinación. Art. X(D) del Reglamento.[11]

Según surge de la discusión que precede, la Ley Núm. 9 tiene el propósito de complementar la Ley Núm. 104, proveyéndole a los funcionarios o empleados públicos que son demandados por actuaciones incurridas dentro del marco de sus funciones y que no están cobijados por la protección de la Ley Núm. 104, un mecanismo para que el Estado pueda, si cualifican,[12] brindarle representación legal y pagar la sentencia que en su día pueda recaer. Las actuaciones cubiertas por la Ley Núm. 9 son aquellas que constituyen violaciones a los derechos civiles del demandante, con las excepciones provistas por la Ley Núm. 104 y el Reglamento.

De otra parte, la Ley Núm. 9 y su Reglamento están redactados de tal forma que se le concede únicamente la potestad a los funcionarios o

_____

la sociedad legal de gananciales compuesta por ambos a quien se le han concedido los beneficios, de conformidad con las disposiciones de la Ley". Art. IV(A) del Reglamento.

[11] En In re Secretario de Justicia, 118 D.P.R. 827 (1987), escolio 3, expresamos que el beneficio principal que provee la Ley Núm. 9 es la representación legal. Señalamos que el pago de la totalidad de la sentencia no es automático, sino que queda a la discreción del Secretario de Justicia, la cual no es absoluta.

[12] El Art. V del Reglamento dispone que son elegibles para recibir los beneficios de la Ley Núm. 9 los funcionarios o empleados públicos que cumplan con los siguientes requisitos:

    (A) Sea[n] demandado[s] en daños y perjuicios en su carácter personal.
    (B) La causa de acción se fundamente en alegadas violaciones a los derechos civiles de la parte demandante debido a actos u omisiones incurridos de buena fe.
    (C) Los hechos que dan lugar a la demanda ocurran en el curso del trabajo del funcionario y dentro del marco de sus funciones.
    (D) Los hechos que dan lugar a la demanda no constituyan delito.
    (E) Los hechos que dan lugar a la demanda no constituyan negligencia inexcusable.
    (F) Los hechos que dan lugar a la demanda no sean contrarios a un estado de derecho establecido jurisprudencialmente mediante sentencia final y firme.

empleados públicos para solicitar sus beneficios, esto es, la representación legal y posteriormente el pago de la sentencia. La Ley Núm. 9 no le reconoce al demandante el derecho de exigir que el E.L.A. se haga cargo de la sentencia que en su día recaiga. El lenguaje utilizado al redactar esta ley avala dicha interpretación. Así, por ejemplo, el Art. 12 de la Ley Núm. 104 (Sec. 1 de la Ley Núm. 9), dispone que el funcionario o empleado público "podrá solicitar" la representación legal por parte del Estado y posteriormente el pago de la sentencia. El Art. 13 de la Ley Núm. 104 (Sec. 1 de la Ley Núm. 9), 32 L.P.R.A. sec. 3086, establece el procedimiento que debe seguir el funcionario o empleado público para acogerse a los beneficios de la Ley Núm. 9. En el mismo se utiliza nuevamente la palabra "solicitar". El Art. 14 de la Ley Núm. 104 (Sec. 1 de la Ley Núm. 9), 32 L.P.R.A. sec. 3087, dispone el procedimiento para revisar la determinación que haga el Secretario de Justicia cuando la misma resulte adversa al funcionario o empleado público. En este artículo se hace referencia únicamente al "solicitante".

Igual situación ocurre con el Reglamento, donde se definen los términos "beneficiario" y "solicitante" con relación a los funcionarios o empleados públicos. A estos efectos, véanse las definiciones que de estos dos términos ofrece el Reglamento.[13] El Reglamento dispone además que, cuando el Secretario de Justicia decide denegar o revocar los beneficios que concede la ley, se le debe notificar al "solicitante o beneficiario" de la intención de denegar o revocar. Art. XI del Reglamento. Es éste, el funcionario o empleado público, el que tiene el derecho de solicitar la revisión de esta determinación, siguiendo el procedimiento establecido. Como se puede apreciar, la terminología utilizada tanto en la Ley Núm. 9 como en el Reglamento, en cuanto a solicitantes y beneficiarios, se refiere exclusivamente a funcionarios o

---

[13] En cuanto al término beneficiario, véase el escolio número 10, ante. El Reglamento define el término solicitante como el "funcionario, su cónyuge o la sociedad legal de gananciales compuesta por ambos que pide los beneficios, de conformidad con las disposiciones de la Ley y este

empleados públicos. En consecuencia, no puede un demandante, como regla general, solicitar que el E.L.A. pague una sentencia impuesta contra un funcionario o empleado público cuando se han concedido los beneficios de la Ley Núm. 9. Esta solicitud de pago la tiene que hacer, pues, el funcionario o empleado público demandado dentro del término de diez (10) días del archivo en autos de una copia de la notificación de la sentencia. Art. X(A) del Reglamento.[14]

## V

Conforme a las conclusiones de hecho y derecho del foro de instancia, se le impuso responsabilidad al E.L.A. en un veintitrés por ciento (23%), por omisiones negligentes de tres funcionarios suyos quienes, dentro del marco de sus funciones, incumplieron con sus deberes. Dichas actuaciones enmarcan dentro de la renuncia de inmunidad soberana condicionada provista por la Ley Núm. 104. Por otra parte, el tribunal de instancia le impuso responsabilidad al policía Adrián Rivas en su capacidad personal, en un setenta y siete por ciento (77%). Asimismo, dispuso que el Estado ha de responder hasta el máximo permitido por la Ley Núm. 104, y distribuyó los ciento cincuenta mil dólares ($150,000) entre todos los demandantes. En cuanto al Policía Rivas, estableció que éste ha de pagar un total de quinientos diez mil dólares ($510,000), distribuidos también entre los demandantes.

De la sentencia de instancia, que no fue apelada y es final y firme, se desprende que dicho tribunal, a tenor con las disposiciones de la Ley Núm. 104, impuso responsabilidad únicamente al E.L.A. y al policía Rivas: "el Estado Libre Asociado y Adr[iá]n Rivas son responsables solidariamente por los daños sufridos por los demandantes", por lo que se

---

Reglamento". Art. IV(I) del Reglamento.

[14] _Quaere_ si los demandantes tenían derecho a solicitar el pago de la sentencia impuesta o a pedir la revisión de la decisión del Secretario de Justicia bajo el Art. 1064 del Código Civil, 31 L.P.R.A. sec. 3028, que dispone lo siguiente: "Los acreedores, después de haber perseguido los bienes de que esté en posesión el deudor para realizar cuanto se les debe, pueden ejercitar todos los derechos y acciones de éste con el mismo fin, exceptuando los que sean inherentes a su persona; pueden también impugnar los actos que el deudor haya realizado en fraude de su derecho".

les condenó al pago de la cantidad de seiscientos sesenta mil dólares ($660,000.00). Pág. 42 de la sentencia de instancia.

Según la ley y la jurisprudencia citadas anteriormente, cuando el tribunal determina que una acción está cubierta por la Ley Núm. 104, y que el E.L.A. es responsable por los daños causados por sus funcionarios o empleados actuando en su carácter oficial, esto impide cualquier otro tipo de acción o recobro contra estos funcionarios o empleados públicos y viceversa. En este caso, las actuaciones de los demandados Cancel, Cepeda y Rodríguez estaban cobijadas por el Art. 8 de la Ley Núm. 104. A su amparo, los demandantes no pueden recobrar de estos el remanente de la sentencia impuesta, como tampoco pueden instar una acción independiente contra estos codemandados que envuelva esta misma cuestión o materia. Estos funcionarios no necesitaban de las disposiciones de la Ley Núm. 9 para quedar protegidos de las consecuencias de sus acciones u omisiones dentro del marco de sus funciones. En el caso de autos, el tribunal de instancia correctamente le impuso responsabilidad al E.L.A. hasta el límite de cuantía dispuesto en la Ley Núm. 104, e hizo solidario al policía Rivas del resto de la sentencia, según establecimos en González Pérez v. E.L.A., supra. Esto se debe a que la actuación del policía Rivas constituía un delito grave y no estaba enmarcada dentro de una relación de agencia o empleo con el Estado. Es el policía Rivas la única persona llamada a satisfacer el resto de la sentencia impuesta.

Por los fundamentos antes expuestos, se dictará una sentencia confirmando la resolución emitida por el Tribunal de Circuito de Apelaciones.


                                        Miriam Naveira de Rodón
                                        Juez Asociada


                    EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Felícita García, et als.

    Demandantes-peticionarios


        v.                                    CC-95-137


Estado Libre Asociado, et als.

    Demandados-recurridos


SENTENCIA


San Juan, Puerto Rico, a 13 de octubre de 1998


    Por los fundamentos antes expuestos, se dicta sentencia confirmando la resolución emitida por el Tribunal de Circuito de Apelaciones el 11 de septiembre de 1995.

    Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López no intervino.


                Isabel Llompart Zeno
            Secretaria del Tribunal Supremo