EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Delca I. Ortiz Santiago, *et. al.*<br><br>Recurrido<br><br>v.<br><br>Hospital Episcopal San Lucas, Inc., *et al.*<br><br>Peticionarios | 2020 TSPR 109<br><br>205 DPR _____ |

Número del Caso:  CT-2019-3


Fecha:  18 de septiembre de 2020


The United District Court
For the District of Puerto Rico:

    Hon. Aida M. Delgado-Colón
    United States District Judge


Materia:  Responsabilidad Civil Extracontractual: Alcance del límite de responsabilidad civil aplicable a los Centros Médicos Académicos Regionales (CMAR) y sus facultativos médicos, en virtud de la Ley de Centros Académicos Regionales de Puerto Rico, Ley Núm. 136 de 27 de julio de 2006, según enmendada.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Delca I. Ortiz Santiago, *et. al.*<br><br>    Recurrido<br><br>        v.<br><br>Hospital Episcopal San Lucas, Inc., *et al.*<br><br>    Peticionarios | **Núm.** CT-2019-0003 |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 18 de septiembre de 2020

El presente recurso de certificación requiere que examinemos el alcance del límite de responsabilidad civil aplicable a los Centros Médicos Académicos Regionales (CMAR) y sus facultativos médicos en virtud de la *Ley de Centros Académicos Regionales de Puerto Rico*, Ley Núm. 136 de 27 de julio de 2006, según enmendada, 24 LPRA sec. 10031 *et seq.* (Ley Núm. 136). En particular, debemos determinar si ese límite monetario aplica individualmente a cada parte contra la cual se reclama o al conjunto de todas las partes demandadas cobijadas por el estatuto.

I.

El 20 de enero de 2016, la Sra. Delca I. Ortiz Santiago, la Sra. Loira E. Ortiz Santiago y el Sr. Carlos R. Ortiz Santiago (en conjunto, los demandantes) presentaron una demanda de daños y perjuicios por impericia médico-hospitalaria en la Corte de Distrito de

los Estados Unidos para el Distrito de Puerto Rico (Corte de Distrito). En ésta, todos reclamaron una compensación por los daños sufridos como consecuencia de la negligencia incurrida en el cuidado médico de su madre, la Sra. Irma Santiago Báez. Su reclamación fue dirigida en contra del Hospital Episcopal San Lucas, Inc. (Hospital), el Dr. Guillermo E. Bolaños-Ávila; el Dr. Edgardo Bermúdez Moreno, su aseguradora, el Sindicato de Aseguradores para la Suscripción Conjunta de Seguros de Responsabilidad Profesional Médico-Hospitalaria (SIMED), y el Dr. Santiago Báez Torres.

Luego de múltiples incidentes procesales que incluyen un extenso descubrimiento de prueba y la denegatoria de una solicitud de sentencia sumaria parcial, el 17 de abril de 2019, la Corte de Distrito presentó un recurso de certificación interjurisdiccional ante este Tribunal. Mediante éste, nos remitió dos preguntas puntuales de estricto Derecho puertorriqueño relacionadas con la interpretación y aplicación de la Ley Núm. 136. Específicamente, las preguntas certificadas son las siguientes:

1) PR Laws Ann. Tit. 24 § 10035, limits the damages recoverable by plaintiffs to "$75,000 for damages suffered by a person and up to $150,000 when the damages were suffered by more than one person or when there are several causes of action to which a single injured party is entitled." Does this limit apply to all defendants, collectively or individually? In other words, if the limit applies, are the plaintiffs entitled to recover the full amount from all defendants subject to RAMC coverage as a group, or can

it recover the limit from each defendant (the Hospital and each individual doctor)?

2) Do the limits codified in P.R. Laws Ann. tit. 24, § 10035 apply to a Regional Academic Medical Center (the Hospital) for the actions and/or omission of a defendant physician not engaged in teaching activities under the RAMC Program?[1]

Por entender que el asunto planteado en la segunda pregunta ya ha sido adjudicado por la Corte de Distrito, limitamos nuestra intervención por vía de la certificación interjurisdiccional ante nuestra consideración a la primera interrogante presentada. En esencia, ésta requiere que determinemos si el límite de responsabilidad dispuesto en la Ley Núm. 136 se extiende a cada facultativo médico y entidad hospitalaria demandada de manera individual o en conjunto.

## II.

Con el propósito expreso de facilitar el acceso y ampliar la oferta de servicios médicos disponibles a la ciudadanía, la Ley Núm. 136 creó los CMAR, unas

---

[1] En cuanto a esta segunda pregunta, conviene destacar que, en un dictamen previo, la Corte de Distrito expresamente excluyó del límite de responsabilidad provisto en la ley al Hospital por la posible responsabilidad vicaria de éste ante las acciones u omisiones del doctor Báez. *Véase* ECF No. 114 en las págs. 1, 14. ("Dr. Báez is not eligible for the RAMC cap. Likewise, the Hospital may not claim the cap in conjunction with Dr. Báez care where there is no indication that his care occurred within the ambit of the Hospital's Teaching activities."). Así lo reconoce la Corte de Distrito en el recurso de certificación cuando afirma que "[t]he Court specifically excluded from the RAMC limit the care rendered by Dr. Báez and implicitly excluded the Hospital from such limits to the extent it may be vicariously liable for Dr. Báez negligent actions or omissions." *Certificación*, en la pág. 13.

facilidades hospitalarias que operan como consorcios médicos entre el estado y ciertas entidades privadas. Le ley define estas entidades como un "[c]onjunto de uno (1) o más hospitales, facilidades de salud, grupos médicos y programas de formación y entrenamiento de profesionales de la salud relacionadas a una Escuela de Medicina acreditada, cuya misión es la educación, investigación y provisión de servicios de salud". 24 LPRA sec. 10031(b). En atención al fin eminentemente público que persigue la creación de los CMAR,[2] la Ley Núm. 136 extiende a éstos los límites monetarios dispuestos en la Ley de Reclamaciones y Demandas contra el Estado, Ley Núm. 104 de 29 de junio de 1955, según enmendada, 32 LPRA sec. 3077 (Ley Núm. 104). Específicamente, la Ley Núm. 136 dispone lo siguiente:

> Se extenderán las limitaciones impuestas en las secs. 3077 et seq. del Título 32, a los Centros Médicos Académicos Regionales, estudiantes, médicos en adiestramiento postgraduado y miembros de facultad de los mismos, por los procedimientos médicos que se lleven a cabo en dichos Centros en el ejercicio

---

[2] *Véase* 24 LPRA sec. 10033 ("Los Centros Médicos Académicos Regionales tienen como propósito fortalecer y desarrollar un sistema integrado de salud pública, tanto a nivel primario, secundario, como terciario. Los Centros Médicos Académicos Regionales ofrecerán un ambiente óptimo en el cual se fundirán los propósitos, prioridades, objetivos y la misión reformadora que tiene, tanto el gobierno como las escuelas de medicina, de ofrecer y brindar servicios de salud costo efectivos, accesibles y de buena calidad a todas las personas por igual, sin tener en cuenta su raza, sexo, creencias religiosas y políticas. A su vez, fortalecerán y desarrollarán los programas de educación para los profesionales de la salud, estimularán el desarrollo, la investigación clínica, epidemiológica y sociomédico y ofrecerán servicios de salud y otros fines, y bajo ninguna circunstancia funcionarán con ánimo de lucro".).

de sus funciones docentes. Dicha limitación establece un máximo de $75,000 por los daños sufridos por una persona y hasta $150,000 cuando los daños y perjuicios se le causaron a más de una persona, o cuando sean varias las causas de acción a que tenga derecho un solo perjudicado. Además, se extenderá al consorcio lo estipulado en el quinto párrafo de la sec. 4105 del Título 26.

Recientemente, en *Rodríguez Figueroa v. Centro de Salud Mario Canales Torresola*, 197 DPR 876 (2017), este Tribunal tuvo la oportunidad de examinar la aplicabilidad y el alcance de la Ley Núm. 136. Específicamente, ante una controversia relacionada con la interpretación del estatuto y su aplicabilidad, resolvimos que la ley tuvo el efecto de imponer límites monetarios a la responsabilidad de los CMAR y a los facultativos que ejercieran labores docentes en éstos y no el de conferir una inmunidad absoluta ante cualquier reclamación de daños y perjuicios por impericia médica. Ello, ante las contrariedades que suponía la referencia al Código de Seguros contenida en la última oración de la sección precitada de la Ley Núm. 136 y el uso nominal de la palabra inmunidad como título de ésta. Para llegar a esta conclusión, examinamos detenidamente las disposiciones contenidas en la Ley Núm. 136 con el fin de determinar qué entidades y facultativos médicos estaban cobijados por el estatuto.

Ante incongruencias secuenciales entre las enmiendas introducidas a la ley y las referencias a distintos párrafos del Código de Seguros, este Tribunal precisó la distinción fundamental entre un límite de responsabilidad y un reconocimiento de inmunidad. A esos efectos, destacó

que la inmunidad suponía la inexistencia de una causa de acción mientras que la imposición de un límite de responsabilidad meramente ponía un tope a la compensación que la parte demandante podía recibir. Por tal razón, se indicó que ambas figuras eran incompatibles. Concluimos que, la intención y el trámite legislativo develaban que la Asamblea Legislativa procuró, mediante la Ley Núm. 136 "extender la aplicación de los límites de responsabilidad que disfruta el Estado Libre Asociado de Puerto Rico, al amparo de la Ley de pleitos contra el Estado, a los estudiantes, médicos en adiestramiento y miembros de facultad que realicen procedimientos médicos en los CMAR". *Rodríguez Figueroa*, 197 DPR en la pág. 885.[3]

Al aclarar la referencia dual a la Ley Núm. 104 y al Código de Seguros mediante una de las enmiendas realizadas a la Ley Núm. 136, puntualizamos que la exposición de motivos de la referida enmienda demostraba que el éxito de los CMAR estribaba justamente en la extensión de los límites de responsabilidad aplicables al Estado en pleitos

---

[3] Fundamentamos esa conclusión en la exposición de motivos de la Ley Núm. 103 de 27 de junio de 2011 en la que se establece lo siguiente:

> Es por ello que esta Asamblea Legislativa entiende necesario aclarar que quienes están sujetos a los límites que le aplican al Estado, además de los propios Centros Médicos Académicos Regionales de Puerto Rico son los estudiantes, residentes y profesionales de salud que en ellos laboren mientras se encuentren ejerciendo funciones docentes.

*Rodríguez Figueroa*, 197 DPR en las págs. 885-886 (citando a Exposición de Motivos, Ley Núm. 103 de 2011, Parte 2, Leyes de Puerto Rico 1674-1675).

por impericia profesional médico hospitalaria. *Id.* Así, concluimos que, dado que el Hospital Episcopal San Lucas había formado un consorcio con la Escuela de Medicina de Ponce, estaba sujeto a los límites de responsabilidad establecidos por la Ley Núm. 136. Consiguientemente, precisamos que "tanto los CMAR, los estudiantes y los miembros de la facultad, en casos constitutivos de impericia médico-hospitalaria, no les cobija una 'inmunidad' sino un límite monetario a las cuantías que se le podría imponer". *Id.* en la pág. 890.[4] Ciertamente, tal conclusión derivó de un reconocimiento tácito de que el límite de responsabilidad aplicable a los CMAR debía operar de la misma forma en la que opera el límite aplicable al Estado en virtud de la Ley Núm. 104. Después de todo, los límites que establece la Ley Núm. 136 no son más que una extensión referencial de los límites dispuestos en la Ley Núm. 104.

## III.

En esencia, el texto de la Ley Núm. 104 autoriza demandar al Estado Libre Asociado de Puerto Rico, pero impone límites a la responsabilidad de éste en reclamaciones por responsabilidad civil extracontractual. Sobre este particular y en lo pertinente a la controversia que plantea el presente recurso de certificación, la Ley Núm. 104 establece lo siguiente:

---

[4] Nótese que, tal y como ocurre en el pleito objeto de esta certificación, en Rodríguez Figueroa, *supra*, el Hospital San Lucas también figuraba como parte demandada.

Se autoriza demandar al Estado Libre Asociado de Puerto Rico ante el Tribunal de Primera Instancia de Puerto Rico por las siguientes causas:

(a) Acciones por daños y perjuicios a la persona o a la propiedad hasta la suma de setenta y cinco mil dólares ($75,000) causados por acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona actuando en capacidad oficial y dentro del marco de su función, cargo o empleo interviniendo culpa o negligencia; o acciones por daños y perjuicios por alegados actos de impericia médico hospitalaria a los profesionales de la salud que laboren en las áreas de obstetricia, ortopedia, cirugía general o trauma exclusivamente en instituciones de salud pública propiedad del Estado Libre Asociado de Puerto Rico, sus dependencias, instrumentalidades y/o municipios, independientemente de si dichas instituciones están administradas u operadas por una entidad privada; Cuando por tal acción u omisión se causaren daños y perjuicios a más de una persona, o cuando sean varias las causas de acción a que tenga derecho un solo perjudicado, la indemnización por todos los daños y perjuicios que causare dicha acción u omisión no podrá exceder de la suma de ciento cincuenta mil dólares ($150,000). Si de las conclusiones del tribunal surgiera que la suma de los daños causados a cada una de las personas excede de ciento cincuenta mil dólares ($150,000), el tribunal procederá a distribuir dicha suma entre los demandantes, a prorrata, tomando como base los daños sufridos por cada uno. Cuando se radique una acción contra el Estado por daños y perjuicios a la persona o a la propiedad, el tribunal ordenará, mediante la publicación de edictos en un periódico de circulación general, que se notifique a todas las personas que pudieran tener interés común, que deberán comparecer ante el tribunal, en la fecha dispuesta en los edictos, para que sean acumuladas a los fines de proceder a distribuir la cantidad de ciento cincuenta mil dólares ($150,000) entre los demandantes, según se provee en las secs. 3077 a 3092a de este título.

32 LPRA sec. 3077.

En múltiples instancias, este Tribunal ha tenido la oportunidad de aplicar el límite monetario contenido en la

Ley Núm. 104 al momento de imponerle responsabilidad aquiliana al Estado Libre Asociado de Puerto Rico. En *Defendini Collazo et al. v. ELA*, 134 DPR 28 (1993), este Tribunal decretó la constitucionalidad de los límites a la compensación impuestos por la Ley Núm. 104. Luego de examinar los orígenes, las manifestaciones y el desarrollo de la doctrina de inmunidad soberana, se examinó la procedencia de la renuncia estatutaria a ésta. Mediante la aplicación de un escrutinio de nexo racional, este Tribunal concluyó que los límites impuestos no violaban la garantía del debido proceso de ley en su vertiente sustantiva. Véase *Defendini Collazo*, 134 DPR en la pág. 75. Así, concluyó que

> La selección de los límites de setenta y cinco mil dólares ($75,000) y ciento cincuenta mil dólares ($150,000) está fundamentada en evidencia relativa al impacto económico que tienen en el fisco las reclamaciones contra el E.L.A. Por lo tanto, los límites tienen un fundamento racional y no son claramente arbitrarios. Además, el Tribunal Supremo federal ha declarado que los límites a cuantías compensables siempre tienen un elemento de arbitrariedad, pero que el mismo no es de tal magnitud que acarree la inconstitucionalidad de la ley.

*Id.*

En lo pertinente a la pregunta planteada en este recurso de certificación, en *Defendini Collazo* también se examinaron los confines de los límites de la responsabilidad del Estado en casos de prorrateo cuando existen varios reclamantes y/o múltiples causas de acción. Al examinar las distintas enmiendas a la Ley Núm. 104, así como su jurisprudencia interpretativa, este Tribunal

destacó que del historial legislativo surgía "con meridiana claridad que la intención legislativa fue evitar que el Estado tuviera que responder sin límite en casos de reclamaciones o demandantes múltiples". *Id.* en la pág. 78.

En cuanto a la enmienda instituida a la Ley Núm. 104 en 1983, se aclaró que la misma tuvo el propósito de aumentar la cuantía a $150,000 "cuando la acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier persona actuando en capacidad oficial o dentro del marco de su función, cargo o empleo, interviniendo culpa o negligencia, causara daños a más de una persona o diera lugar a más de una causa de acción". *Id.* En otras palabras, el límite a la responsabilidad del Estado aumentaría a $150,000 únicamente en aquellos casos en los que: (1) de los mismos hechos surgieran múltiples causas de acción para uno o más reclamantes o (2) existieran múltiples reclamantes de daños por los mismos hechos.

Para llegar a esta conclusión, resultó forzoso evaluar qué exactamente constituía una causa de acción para propósitos de los límites monetarios. En cuanto a esto se dictaminó que, una causa de acción en el contexto particular de la Ley Núm. 104 se fundamentaba en tres elementos, a saber: (1) el acto o conducta negligente; (2) la producción de daños, y (3) la relación causal entre el acto o conducta negligente y el daño causado. *Id.* en la pág. 82. Múltiples causas de acción, pues, sólo se configurarían cuando pudieran constatarse "diversas relaciones entre las personas perjudicadas y distintas

circunstancias de tiempo y espacio que indiquen la separabilidad de cada causa de acción". *Id.* (*citando a Ramos Rivera v. ELA*, 90 DPR 817, 819-820 (1964).

De esta manera, la existencia de una causa de acción se debe evaluar en función de la relación de cada persona con la actuación u omisión negligente que ocasionó los daños que se reclaman por vía de la demanda. El Tribunal en *Defendini Collazo* indicó que "[s]e consideran como causas de acción separadas la una de la otra, aunque se produzcan dentro de un mismo accidente, la de una persona por sus propios daños físicos y por los daños a otra persona por la cual tenga él derecho a reclamar por nexo familiar, dependencia, subrogación, etc.". *Id.* En ese caso particular, se concluyó que reclamaciones independientes de un mismo demandante por daños físicos y mentales, y por disminución de su capacidad productiva no constituían causas de acción separadas que ameritaran aplicar el límite de $150,000. Por el contrario, se trataba de una sola causa de acción a la que le aplicaba el límite de $75,000.

El concepto de *causa petendi*[5] comprende una descripción acertada de lo que constituye una causa de acción para propósitos de interpretar cuál es el límite

---

[5] "Fundamento de la acción, integrado por el conjunto de hechos que, subsumidos en lo dispuesto en normas jurídicas, otorgan al actor el derecho que trata de hacer valer ante los tribunales o ante cualquier agencia administrativa". *Diccionario del español jurídico*, Real Academia Española, Consejo General del Poder Judicial.

aplicable a un pleito incoado en contra del Estado. Es decir, lo crucial al momento de determinar qué límite monetario será aplicable es el fundamento para solicitar un remedio bajo un supuesto particular de hechos. Bajo esta interpretación, la determinación no debe hacerse en función de la cantidad de personas en contra de quienes se reclama, sino en función de aquellos que reclaman y sus fundamentos para solicitar uno o varios remedios. Consiguientemente, la cantidad de cocausantes de un daño en particular por el cual el Estado debe responder en virtud de la Ley Núm. 104 es inmaterial al momento de determinar el límite aplicable. Ello es así porque el número de personas que incurren en un acto u omisión negligente no figura como uno de los tres (3) elementos constitutivos de una causa de acción de daños y perjuicios en nuestro ordenamiento.

Cónsono con esta interpretación, en *García v. ELA*, 146 DPR 725 (1998), un tribunal de instancia le impuso responsabilidad por la muerte de una joven embarazada víctima de violencia doméstica al policía agresor que era su compañero consensual y al Estado Libre Asociado de Puerto Rico. La imposición de responsabilidad al Estado respondió a las acciones negligentes de tres (3) policías que no investigaron diligente y oportunamente denuncias previas de violencia doméstica en contra del agresor ni despojaron a éste de su arma de reglamento, la cual fue utilizada para la comisión del fatídico crimen. En su sentencia, el foro primario impuso responsabilidad

solidaria a todos los demandados por $660,000. No obstante, puntualizó que el Estado respondía hasta el tope de $150,000 dispuesto en la Ley Núm. 104. Luego de que esa sentencia adviniera final y firme, los familiares de la víctima solicitaron al tribunal de instancia que ordenara al ELA, como deudor solidario, satisfacer la totalidad de la sentencia, ascendente a $660,000. El foro primario denegó tal solicitud y se amparó en el límite de responsabilidad aplicable al Estado.

Ante este Tribunal, los familiares de la víctima plantearon, entre otras cosas, que -en virtud de la solidaridad impuesta- correspondía al ELA satisfacer la totalidad de la sentencia. Este Tribunal no les dio la razón y concluyó que "cuando el tribunal determina que una acción está cubierta por la Ley Núm. 104, *supra*, y que el E.L.A. es responsable por los daños causados por sus funcionarios o empleados actuando en su carácter oficial, esto impide cualquier otro tipo de acción o recobro contra estos funcionarios o empleados públicos y viceversa." *García v. ELA*, *supra*, en la pág. 742. Este Foro aclaró que la responsabilidad del ELA por las actuaciones negligentes de los oficiales de la Policía se daba en función de las labores que éstos realizaron en su capacidad oficial. Por tanto, la solidaridad del ELA se limitaba al tope impuesto por la Ley Núm. 104. El resto de la sentencia únicamente podría ser recobrada exigiendo el pago al agresor, cuya actuación "constituía un delito grave y no estaba enmarcada dentro de una relación de agencia o empleo con

el Estado". *Id.* Por tanto, y ante la concurrencia de múltiples causas de acción pertenecientes a los familiares de la víctima que figuraban como demandantes en el pleito, este Tribunal mantuvo el límite de $150,000 impuesto por el foro primario.

Conviene destacar que, en ese caso, el ELA respondía por las actuaciones negligentes de tres (3) funcionarios que, en su capacidad oficial, fallaron a su deber de proteger a una víctima de violencia doméstica. El foro sentenciador, sin embargo, no impuso a cada uno de estos funcionarios de forma individual una cuantía correspondiente al tope de responsabilidad dispuesto por la Ley Núm. 104. Por el contrario, el límite de responsabilidad de $150,000 aplicó a todos los causantes del daño en conjunto, en tanto y cuanto el ELA respondía vicariamente bajo el Artículo 1803[6] del Código Civil por las actuaciones de éstos en su capacidad oficial.[7]

---

[6] El inciso del Artículo 1803 que le impone responsabilidad vicaria al Estado fue añadido justamente como consecuencia de la aprobación de la Ley Núm. 104. Véase Cód. Civ. PR, Art. 1803, 31 LPRA § 5142.

[7] En el ámbito de la responsabilidad médico-hospitalaria, tal y como ocurre con el Estado, este Tribunal ha dictaminado que los hospitales responden vicariamente por los daños causados a sus pacientes como consecuencia de las actuaciones negligentes de su personal médico en el despliegue de sus funciones laborales. *Véanse Sagardía De Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484 (2009); *López v. Hospital Presbiteriano, Inc.*, 107 DPR 197 (1978); *Hernández v. La Capital*, 81 DPR 1031 (1960). Así, el incumplimiento por parte del personal de un hospital con su deber de brindar a los pacientes la atención que satisfaga las exigencias generalmente reconocidas por la profesión médica acarreará la imposición de responsabilidad vicaria al hospital frente al paciente perjudicado. *Núñez v. Cintrón*, 115 DPR 598 (1984).

**IV.**

La naturaleza, proveniencia y propósito del límite a la responsabilidad comprendido en la Ley Núm. 136 apunta, sin lugar a duda, a que el referido límite aplica al conjunto de las partes demandadas en un pleito y no a cada parte de forma individual. Concluir lo contrario implicaría establecer una distinción injustificada entre la Ley Núm. 136 y la Ley Núm. 104 de la cual proviene el límite de responsabilidad en cuestión. Además, supondría reconocer inopinadamente que la cantidad de causantes de un daño constituye un elemento esencial al momento de fijar la compensación en una causa de acción de daños y perjuicios. Los límites impuestos a la responsabilidad vicaria de los CMAR por las actuaciones de su personal médico, tal y como ocurre con la responsabilidad vicaria del Estado, se fijan en función de la cantidad de causas de acción y/o la cantidad de reclamantes y aplican a todos los causantes del daño en conjunto. En este caso, dado que existen múltiples reclamantes con sus respectivas causas de acción, el Hospital, el doctor Bolaños-Ávila y el doctor Bermúdez Moreno están cobijados conjuntamente por el límite de $150,000 dispuesto en la Ley Núm. 136.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Delca I. Ortiz Santiago, *et. al.*<br><br>     Recurridos<br><br>       v.<br><br>Hospital Episcopal San Lucas, Inc., *et al.*<br><br>     Peticionarios | **Núm.** CT-2019-0003 |

SENTENCIA

San Juan, Puerto Rico, a 18 de septiembre de 2020

Por los fundamentos expuestos en la Opinión que antecede, resolvemos que, dado que existen múltiples reclamantes con sus respectivas causas de acción, el Hospital, el Dr. Guillermo E. Bolaños-Ávila y el Dr. Edgardo Bermúdez Moreno están cobijados conjuntamente por el límite de $150,000 dispuesto en la *Ley de Centros Académicos Regionales de Puerto Rico*, Ley Núm. 136 de 27 de julio de 2006, según enmendada, 24 LPRA sec. 10031 *et seq.*

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez, el Juez Asociado señor Rivera García y el Juez Asociado señor Estrella Martínez concurren sin opinión escrita.

                   José Ignacio Campos Pérez
              Secretario del Tribunal Supremo