La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
La inclusión del Estado en esta acción por daños y per-juicios contra funcionarios demandados en su capacidad personal y oficial nos requiere analizar si la decisión de asumir la representación legal de estos al amparo de las disposiciones de la Ley Núm. 9 de 26 de noviembre de 1975 (32 LPRA see. 3085) guarda alguna relación con el requi-sito jurisdiccional del emplazamiento al Estado y la notifi-cación requerida por la Ley de Reclamaciones y Demandas Contra el Estado.(1) En particular, debemos resolver si al proveerle representación legal a funcionarios que son de-mandados en su carácter personal, el Estado se somete voluntariamente a la jurisdicción del Tribunal como de-mandado en el mismo caso.
I
El 12 de julio de 2005, el Sr. Juan Cirino González, un confinado bajo la custodia del Estado, presentó, por dere-cho propio, una demanda contra la Administración de Co-rrección por daños y perjuicios. Alegó que el 22 de abril de ese año fue agredido por varios guardias penales. Poco des-pués, el 26 de septiembre de 2005, el señor Cirino González presentó, también por derecho propio, una primera de-manda enmendada para incluir a cuatro oficiales penales, en su capacidad oficial y personal.(2) En ninguna de esas ocasiones se expidieron los emplazamientos correspon-dientes.
*21 El 26 de enero de 2006, el Tribunal de Primera Instan-cia le asignó representación legal de oficio al señor Cirino González. Sin embargo, no fue hasta el 24 de agosto de 2006 que un abogado finalmente asumió esa representa-ción.(3) El 29 de mayo de 2007, el foro de instancia ordenó la expedición de los emplazamientos cuyo diligenciamiento estuvo, aparentemente, a cargo de la Oficina de Alguaciles de ese tribunal.(4) Como consecuencia de lo anterior, el 3 de agosto de 2007 se emplazó al codemandado Marcucci y a la Sociedad Legal de Gananciales compuesta por este y su esposa, así como a la Administración de Corrección. De igual forma, el 17 de septiembre se emplazó personalmente al codemandado Burgos.(5) Ahora bien, no se logró empla-zar a los codemandados Medina Cotto y Acevedo Cotto, pues estos ya no eran empleados de la Administración de Corrección. (6) La parte demandante peticionaria sostiene que nunca se le notificó el diligenciamiento negativo en cuanto a estos dos codemandados y por eso entendió que habían sido debidamente emplazados. No obstante, en nin-gún momento se emplazó al Secretario de Justicia ni se le envió copia de la demanda o del emplazamiento.
El 14 de noviembre de 2007, el Estado Libre Asociado solicitó un término adicional de sesenta días para evaluar la solicitud de representación legal al amparo de la Ley *22 Núm. 9 de 26 de noviembre de 1975, supra, presentada por el codemandado Burgos.(7) El foro de instancia atendió esa moción expresando que no había “nada que proveer” y aña-dió que “[s]i no ha asumido representación legal, no tiene derecho a solicitud alguna”.(8) Poco después, el 23 de enero de 2008, el Estado solicitó, a nombre de los codemandados Marcucci y Burgos, la desestimación del caso alegando que no se habían agotado los remedios administrativos(9) Sin embargo, no fue hasta el 14 de octubre de 2008 que el Es-tado Libre Asociado compareció formalmente “en represen-tación del Teniente Frank Marcucci y el Sargento Angel L. Burgos por la reclamación de daños y perjuicios en su ca-rácter personal”.(10)
El 9 de diciembre de 2008, se presentó una segunda demanda enmendada a los efectos de clarificar que la causa de acción del demandante era por alegadas violacio-nes a sus derechos civiles. Sin someterse a la jurisdicción del Tribunal, el 26 de febrero de 2009, el Estado Libre Aso-ciado presentó una moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V. Adujo, entre otras razones, que no se le había emplazado adecuadamente según la Regla 4.4(g) del cuerpo norma-tivo, 32 LPRA Ap. V, toda vez que no se envió copia de la demanda y del emplazamiento al Secretario de Justicia, tal y como exige esa disposición.(11) Por lo tanto, el ELA sos-tuvo que el tribunal no había adquirido jurisdicción sobre *23 su persona. Además, alegó que había transcurrido el pe-riodo de seis meses para emplazar al Secretario dispuesto por la Regla 4.3 de Procedimiento Civil, 32 LPRAAp. V.
Para responder a las alegaciones del Estado, el 15 de abril de 2009, el demandante presentó varios escritos. En el primero, se opuso a la moción de desestimación alegando que el Estado se debió haber dado por emplazado al conce-derle a los codemandados Marcucci y Burgos el beneficio de representación legal al amparo de la Ley Núm. 9. Según el demandante, el ELA se sometió voluntariamente a la juris-dicción del tribunal al otorgar representación legal a los codemandados y al comparecer al foro judicial en el ejerci-cio de esa representación. El segundo escrito de la parte demandante presentado el 15 de abril de 2009 fue una ter-cera demanda enmendada para incluir expresamente al ELA como parte codemandada, “para así evitar que [el Estado] siguiera dilatando los procesos con mociones de desestimación a pesar de que ya se había sometido a la jurisdicción [del tribunal]”.(12) Finalmente, el demandante presentó una moción para expedir emplazamientos contra el Estado Libre Asociado.
El Tribunal de Primera Instancia declaró “con lugar” la moción de desestimación presentada por el ELA en repre-sentación de la Administración de Corrección. El tribunal resolvió que no tenía jurisdicción sobre la persona del ELA porque la Administración de Corrección no era una corpo-ración pública sino una agencia y había que enviar copia de la demanda y del emplazamiento al Secretario de Jus-ticia según ordena la Regla 4.4(g) de Procedimiento Civil, supra, lo que no se hizo en este caso. De igual forma, con-cluyó que el ELA era “parte indispensable de este pleito toda vez que era imprescindible incluirlo como represen-tante de la Administración de Corrección y de todos los oficiales de custodia”. En cuanto a esto explicó:
*24 El ELA supliría la capacidad legal de su agencia y es enton-ces cuando el Tribunal adquiriría jurisdicción sobre la misma. Por otro lado, el ELA, a través del Departamento de Justicia, es el representante legal de los oficiales de custodia que están demandados por daños y perjuicios en su carácter oficial y personal [...] Este Tribunal no puede entrar en los méritos ni adjudicar la reclamación de autos sin la presencia de ELA.(13)
Acto seguido, el Tribunal de Primera Instancia declaró “sin lugar” la tercera demanda enmendada que incluía al ELA, toda vez que “[l]a representación legal del deman-dante pretende remediar lo que hace dos (2) años debió subsanar”(14) Por lo tanto, también desestimó la causa de acción contra los codemandados Marcucci y Burgos.(15) Finalmente, desestimó con perjuicio la causa de acción contra los codemandados Medina Cotto y Acevedo Cotto “toda vez que éstos no fueron emplazados, ocasionando así que este Tribunal no adquiriera jurisdicción sobre sus personas”(16)
Ante el Tribunal de Apelaciones, el señor Cirino Gonzá-lez alegó que el foro de instancia erró al resolver que no había adquirido jurisdicción sobre el ELA. Nuevamente, sostuvo que la decisión del ELA en cuanto a los beneficios de la Ley Núm. 9 puso en aviso al Estado sobre el pleito en su contra y que al asignarle representación legal a los co-demandados Marcucci y Burgos el Estado se sometió a la jurisdicción del Tribunal. Además, cuestionó la apreciación del foro primario de que el ELA era parte indispensable y, por lo tanto, alegó como error la desestimación de la de-manda contra los codemandados emplazados por falta de parte indispensable. En cuanto a la desestimación con per- *25 juicio de la causa de acción contra los codemandados Medina Cotto y Acevedo Cotto, el demandante expuso que se le debía dar una oportunidad para emplazarlos nueva-mente, una vez el ELA proveyera sus últimas direcciones conocidas o, en defecto de esto, se le debía permitir empla-zarlos por edicto. El ELA presentó sus argumentos en con-trario mediante una comparecencia especial y los code-mandados Marcucci y Burgos comparecieron por vía de la representación legal otorgada por el Departamento de Justicia.
El foro intermedio revocó la sentencia del Tribunal de Primera Instancia. Concluyó que para emplazar al ELA era necesario cumplir con la Regla 4.4 de Procedimiento Civil, supra.(17) Sin embargo, resolvió que el Estado compa-reció voluntariamente y, aunque alegó falta de jurisdicción sobre su persona, se sometió a la jurisdicción del tribunal al comparecer como representante legal de los codemandados Marcucci y Burgos. El foro apelativo ató la jurisdicción a la notificación al Estado requerida por la Ley de Recla-maciones y Demandas Contra el Estado, y entendió que como la Administración de Corrección conocía del pleito y sus implicaciones, “puede razonablemente concluirse que al comparecer para representar a los funcionarios deman-dados en su carácter personal al amparo de la Ley Núm. 104, supra, el ELA en representación de la Administración de Corrección, se sometió a la jurisdicción del tribunal”. (18) Utilizando la jurisprudencia de este Tribunal que discute el requisito de notificación al Secretario de Justicia cuando se demanda al Estado,(19) en particular, el que el propósito central de esa notificación es poner en aviso al gobierno de *26 la posible existencia de un pleito en su contra, el foro ape-lativo concluyó que cuando el Estado otorgó el beneficio de la representación legal a los codemandados, se cumplió el propósito de la notificación que establece la Ley de Recla-maciones y Demandas Contra el Estado. Es decir, que se hizo innecesario cumplir con la Regla 4.4 de Procedimiento Civil, supra, pues al estar adecuadamente notificado del' pleito y aun así asumir la representación legal de los code-mandados, el ELA se sometió voluntariamente a la juris-dicción del tribunal.(20)
En lo que respecta a los emplazamientos de los code-mandados Medina Cotto y Acevedo Cotto, el foro apelativo resolvió que “[d]ada su condición de confinamiento, es evi-dente que el apelante no tiene la facilidad que tendría cualquier otro demandante para diligenciar los correspon-dientes emplazamientos”.(21) Por lo tanto, había justa causa para la tardanza en diligenciar los emplaza-mientos.(22) De igual forma, resaltó que “fue el ELA quien tuvo a su cargo la gestión de realizar los diligenciamientos y quien conoce y tiene control de la información que hu-biera permitido diligenciar los emplazamientos contra los codemandados que cesaron de trabajar para la Administra-ción de Corrección”.(23) En fin, el Tribunal de Apelaciones dejó sin efecto la desestimación de la demanda contra to- *27 dos los codemandados, acreditó la jurisdicción del foro de instancia sobre el ELA y autorizó el diligenciamiento de los emplazamientos a los codemandados Medina Cotto y Acevedo Cotto. Una moción de reconsideración presentada por el Estado fue declarada “sin lugar”.
Inconforme con esa determinación y aun sin someterse a la jurisdicción del tribunal, el Estado Libre Asociado pre-sentó una petición de certiorari ante esta Curia para seña-lar la comisión de varios errores. En primer lugar, el Es-tado sostiene que en este caso se obviaron las reglas de emplazamiento de manera insubsanable, rechazando así la aseveración de que se sometió voluntariamente a la juris-dicción del tribunal al haber otorgado representación legal a los codemandados Marcucci y Burgos al amparo de la Ley Núm. 9 de 26 de noviembre de 1975. Además, cuestionó el que el Tribunal de Apelaciones determinara que la condi-ción de confinado, por sí sola, le otorgó al señor Cirino Gon-zález justa causa para la demora en el emplazamiento o que obligara a concluir que este carecía de medios para diligenciar los emplazamientos.(24)
En cuanto a la insuficiencia del emplazamiento, el Es-tado sostiene que la Administración de Corrección es una agencia gubernamental que carece de personalidad jurí-dica propia, por lo cual se requiere cumplir con lo estable-cido en la Regla 4.4(g) de Procedimiento Civil, supra, es decir, que hace falta entregar copia de la demanda y del emplazamiento al Secretario de Justicia. Además, sostiene el Estado que el demandante también violó la Regla 4.3 de Procedimiento Civil, supra, que exige que se diligencien los emplazamientos dentro de los seis meses de su expedición. Cuestiona así el que hubiera justa causa para que el de-mandante se tardara casi dos años para emplazar adecua- *28 damente al Estado, en referenda a la modón que el de-mandante presentó en el 2009 para que se expidieran los emplazamientos dirigidos al ELA.
En cuanto a la tesis de sumisión voluntaria, el ELA alega que no llevó a cabo acto sustancial alguno que equi-valga a someterse a la jurisdicción del tribunal. Por el con-trario, entiende que “[l]a intervención del Secretario de Justicia como representante legal de un funcionario bene-ficiado por la ley solo puede tener efecto con relación al funcionario mismo en su carácter personal, en vista de que el rol del Estado está estrictamente limitado a lo dispuesto en la ley”.(25) Por lo tanto, sostiene que no debe concluirse que asumir tal representación legal lo haga automática-mente parte en el pleito. Finalmente, el ELA plantea que la jurisprudencia sobre la notificación al Secretario de Justi-cia requerida por la Ley de Reclamaciones y Demandas Contra el Estado es impertinente para efectos de determi-nar si hay jurisdicción sobre la persona, ya sea a través del emplazamiento o la sumisión voluntaria.
El 18 de marzo de 2011 expedimos el auto de certiorari. En su alegato, el señor Cirino González insiste en varios asuntos. En primer lugar, que no fue debidamente notifi-cado del diligenciamiento negativo de los emplazamientos contra los codemandados Medina Cotto y Acevedo Cotto, por lo que no procedía la desestimación con perjuicio orde-nada por el foro de instancia. Además, alega que hubo justa causa para no emplazar a estos funcionarios en el término de seis meses. En segundo lugar, insiste en que la decisión del ELA de proveer representación legal a los co-demandados Marcucci y Burgos constituyó un someti-miento voluntario por parte del Estado.(26) Esto, pues al tomar esa decisión el ELA conocía necesariamente que ha-bía una demanda en su contra y las implicaciones de esta *29 y, comoquiera, decidió comparecer voluntariamente.(27) Por tanto, según el demandante, como el ELA conocía de la demanda, no había que cumplir con los requisitos de noti-ficación de la Ley Núm. 104.(28) Por último, afirma el de-mandante recurrido que el ELA no es parte indispensable en este caso por lo que tampoco se debió desestimar la causa de acción contra los codemandados Marcucci y Bur-gos por esa razón. Resolvemos.
II
Para resolver adecuadamente esta controversia, tenemos que atender varios asuntos procesales y sustantivos que requieren un análisis separado pero relacionado. Comencemos con la interrogante de si hay jurisdicción sobre la persona del Estado Libre Asociado. En nuestro ordenamiento procesal, un tribunal adquiere jurisdicción sobre el demandado de dos maneras distintas: cuando se utilizan adecuadamente los mecanismos procesales de emplazamiento establecidos en las Reglas de Procedimiento Civil o cuando la parte demandada se somete voluntariamente a la jurisdicción del tribunal, explícita o tácitamente.(29) Debemos analizar si en este caso se cumplieron los requisitos de alguna de esas dos vías; comencemos con el emplazamiento.
El emplazamiento es el mecanismo procesal principal que permite al tribunal adquirir jurisdicción sobre el demandado de forma tal que este quede obligado por el *30 dictamen que finalmente se emita.(30) El propósito del em-plazamiento es notificar a la parte demandada, a grandes rasgos, que existe una acción judicial en su contra para que, si así lo desea, ejerza su derecho a comparecer en el juicio, ser oído y presentar prueba a su favor.(31) Se trata de una exigencia del debido proceso de ley, “por lo que se re-quiere una estricta adhesión a sus requerimientos”.(32) La Regla 4 de Procedimiento Civil, supra, provee los criterios para determinar si el señor Cirino González emplazó ade-cuadamente a la Administración de Corrección. Para em-pezar, debemos precisar cuál inciso de esa regla cubre la situación que presenta este caso.
La Regla 4.4 de Procedimiento Civil de 2009 dispone.(33)
*31 El emplazamiento y la demanda se diligenciarán conjuntamente. [...] El diligenciamiento se hará de la manera siguiente:
.........
(e) A una corporación, compañía, sociedad, asociación o cualquier otra persona jurídica, entregando copia del empla-zamiento y de la demanda a un(a) oficial, gerente administra-tivo(a), agente general o a cualquier otro(a) agente autoriza-do(a) por nombramiento o designado(a) por ley para recibir emplazamientos. A la Sociedad Legal de Gananciales, entre-gando copia del emplazamiento y de la demanda a ambos cónyuges.
(f) Al Estado Libre Asociado de Puerto Rico, entregando co-pia del emplazamiento y de la demanda al Secretario o Secre-taria de Justicia o ala persona que designe.
(g) A un(a) funcionario(a) o a una instrumentalidad del Es-tado Libre Asociado de Puerto Rico, que no sea una corpora-ción pública, entregando copia del emplazamiento y de la de-manda a dicho(a) funcionario(a) o al(a la) jefe(a) ejecutivo(a) de dicha instrumentalidad. Además, será requisito indispensable que en todos los pleitos que se insten contra un(a) funcio-nario(a) o una instrumentalidad del Estado Libre Asociado de Puerto Rico, que no sea una corporación pública, la parte de-mandante entregue copia del emplazamiento y de la demanda al Secretario o Secretaria de Justicia o a la persona que designe. Si la instrumentalidad es una corporación pública, entregando las copias según lo dispuesto en la Regla 4.4(e) de este apéndice [...] (Énfasis suplido).(34)
Para saber con cuál inciso de la Regla 4.4 se debe cumplir, hay que determinar si la demandada es una corporación pública, una “instrumentalidad” o el propio Estado. En Fred y otros v. E.L.A., 150 DPR 599, 606 (2000), resolvimos que las corporaciones públicas se emplazan según lo dispuesto en la Regla 4.4(e), las “instrumentalidades” que no sean corporaciones públicas según la Regla 4.4(g) y, cuando se trate del Estado propiamente, se recurrirá a la Regla 4.4(f).(35) En ese caso adoptamos unos cri- *32 terios para distinguir entre estos tres tipos de organismos públicos. En primer lugar, diferenciamos entre aquellas entidades gubernamentales que no tienen personalidad ju-rídica propia y las que sí la tienen. Si la entidad no posee personalidad jurídica propia, el verdadero demandado es el Estado Libre Asociado, por lo que se debe recurrir a la Regla 4.4(f). En ese caso, no es necesario emplazar al jefe de la agencia para adquirir jurisdicción sobre el Estado.(36) En segundo lugar, atendimos la distinción entre las enti-dades que son, solamente, “instrumentalidades” públicas y aquellas que, además, son corporaciones públicas, recono-ciendo que “en nuestra legislación, el concepto ‘instrumen-talidad’ no tiene un significado concreto”. (37) En atención a ello, resolvimos que una corporación pública tiene facultad para demandar y ser demandada y, a su vez, genera sus propios fondos. Por el contrario, una “instrumentalidad” pública, aunque tiene personalidad jurídica propia y puede demandar y ser demandada, no genera sus propios fondos, pues estos provienen del ELA.(38) Cuando se trata de ese tipo de entidad gubernamental, el emplazamiento al Es-tado Libre Asociado es inválido si se notifica solo al jefe de la entidad gubernamental pero no se emplaza al Secretario *33 de Justiciad.(39) Por lo tanto, como ordena la Regla 4.4(g), supra, cuando se demanda a “instrumentalidades” del ELA también se tiene que emplazar al Secretario de Justicia.(40)
Como explica Cuevas Segarra, “[c]uando se demanda a un departamento ejecutivo del Gobierno, sin personalidad propia para demandar y ser demandado, la verdadera parte demandada es el ELA y no el Departamento. La in-clusión del Departamento como parte querellada o deman-dada es improcedente por superflua y debe eliminarse”.(41) Como regla general, un departamento ejecutivo no tiene personalidad jurídica distinta y separada del Estado Libre Asociado de Puerto Rico y, por lo tanto, no puede demandar ni ser demandado independiente del Estado.(42) Para que una entidad gubernamental tenga capacidad para deman-dar y ser demandada, su ley habilitadora ha de reconocerle expresamente esa facultad o, en su defecto, debe inferirse razonablemente del esquema estatutario.(43) De concluir que, en efecto, la dependencia gubernamental no posee personalidad jurídica propia, estaremos ante el Estado propiamente. Si bien existen otros factores que facilitan el análisis para distinguir entre una agencia y una “instru-mentalidad”,(44) sin duda el más importante es la existen-cia de personalidad jurídica propia, es decir, su capacidad de demandar y ser demandada.(45)
La Administración de Corrección se creó en virtud *34 de la Ley Núm. 116 de 22 de julio de 1974 (4 LPRA see. 1111 et seq.). Según se desprende de la Exposición de Mo-tivos, la Administración se creó “con los poderes y con la flexibilidad necesaria para maximizar la probabilidad de rehabilitación del delincuente y para viabilizar su pronta reintegración al núcleo familiar y a la comunidad como ciu-dadano productivo y respetuoso de la ley”.(46) Esta depen-dencia gubernamental sería dirigida por un administrador nombrado por el Gobernador y confirmado por el Senado.(47) Los poderes de la agencia y su administrador se encuentran en los Artículos 5 y 6 (4 LPRA sees. 1112-1113) del estatuto e incluyen organizar servicios de corrección, establecer programas de tratamiento y rehabilitación, es-tructurar la política pública, adoptar reglamentación, pre-parar y administrar su presupuesto.
En 1993, la Asamblea Legislativa aprobó el Plan de Re-organización Núm. 3. De acuerdo con este se creó el Departamento de Corrección y Rehabilitación, que agrupó, a su vez, a la Administración de Corrección, la Administración de Instituciones Juveniles, la Junta de Libertad Bajo Palabra y la Corporación de Empresas de Adiestramiento y Trabajo. Según surge del Plan, todas estas agencias “responden directamente al Gobernador o a un Secretario en forma individual; son independientes entre sí y funcionan con autonomía”.(48) Entre los poderes otorgados a la nueva entidad estaban: ejercer las funciones, poderes y faculta-des que el Gobernador le transfiriera o delegara; dirigir, coordinar, supervisar y evaluar las operaciones de los or-ganismos que componen el Departamento; aprobar regla-mentación y asesorar al Gobernador y a la Asamblea Le-gislativa en la formulación de política pública. Finalmente, *35 por vía del Plan de Reorganización Núm. 2 de 2011,(49) se derogó la Ley Núm. 116 y el Plan de Reorganización Núm. 3 de 1993, reestableciendo “el Departamento de Corrección y Rehabilitación como el organismo en la Rama Ejecutiva responsable de implantar la política pública relacionada con el sistema correccional y de rehabilitación”.(50) Los poderes otorgados al Departamento reorganizado son simila-res a los que ya poseía bajo el Plan de Reorganización Núm. 3 y la Ley Núm. 116 que creó la Administración de Corrección.(51)
Ninguna de estas medidas legislativas otorgó ex-presamente a la Administración de Corrección la capacidad de demandar y ser demandada. Tampoco podemos concluir que dicha capacidad se desprenda razonablemente del esquema estatutario adoptado a través de los años. Por lo tanto, es forzoso concluir que la Administración de Corrección no es una “instrumentalidad” pública sino, por el contrario, un departamento de la Rama Ejecutiva que carece de personalidad jurídica propia. En ese sentido, cuando se insta una demanda de daños y perjuicios contra la Administración de Corrección, el verdadero demandado es el Estado Libre Asociado y al emplazarlo deben cumplirse las disposiciones de la Regla 4.4(f) de Procedimiento Civil, supra. Es decir, únicamente hay que emplazar al Secretario de Justicia o a la persona a quien este haya delegado esa función. En el caso de autos, solamente se emplazó a la Administración de Corrección. Nunca se emplazó personalmente al Secretario de Justicia. Por lo tanto, se incumplió la Regla 4.4(f) y no se asumió jurisdicción sobre el Estado Libre Asociado por vía de la Administración de Corrección.
No obstante, la defensa de falta de jurisdicción *36 sobre la persona es renunciable. Se trata de una defensa que debe tramitarse según dispone la Regla 10.2 de Proce-dimiento Civil, 32 LPRAAp. V, por lo que hay que presen-tar la alegación de falta de jurisdicción “en la primera oportunidad y no deben presentarse otras mociones y otras alegaciones, ya que implicaría una renuncia a los defectos en el emplazamiento. Una moción posterior levantando esos defectos sería tardía y no prosperaría”.(52) En el caso de autos, la primera vez que el ELA compareció en representación de la Administración de Corrección, el 26 de febrero de 2009, solicitó la desestimación de la demanda, en-tre otras razones, por falta de jurisdicción sobre la persona al haberse incumplido los requisitos del emplazamiento.
Ahora bien, la parte demandante alega que el ELA se sometió voluntariamente a la jurisdicción del tribunal al brindar representación legal a los codemandados Marcucci y Burgos y comparecer a nombre de estos al foro judicial. Como vimos, el Tribunal de Apelaciones aceptó esta interpretación. Además, tanto la parte demandante como el foro intermedio sostienen que la decisión de brindar re-presentación legal, producto, a su vez, de la evaluación que hizo el Secretario de Justicia de la petición de los codeman-dados, cumple con la notificación requerida por la Ley de Reclamaciones y Demandas Contra el Estado, pues en ese proceso el ELA supo de la existencia de un pleito en su contra. Concluyen que al cumplirse por ese medio el requi-sito de notificación resultó innecesario emplazar al Estado formalmente. Por el contrario, afirman que tal conoci-miento, sumado a la decisión del Estado de comparecer en representación de los codemandados, equivale a una sumi-sión voluntaria a la jurisdicción del Tribunal. Para anali-zar la validez de la contención del demandante, según adoptada por el Tribunal de Apelaciones, hace falta estu-diar la figura de la sumisión e indagar en el esquema es- *37 tablecido en la Ley Núm. 9. De igual forma, es necesario examinar el requisito de notificación al Secretario de Jus-ticia al amparo de la Ley de Reclamaciones y Demandas Contra el Estado.
Como hemos visto, los tribunales no pueden actuar sobre un demandado si no adquieren autoridad, es decir, jurisdicción, sobre este.(53) Típicamente, tal jurisdicción se adquiere a través del emplazamiento. Ahora bien, el emplazamiento es renunciable y hemos resuelto que “[u]na forma reconocida de efectuar tal renuncia es mediante la sumisión expresa o tácita del demandado”. (54) Específicamente, aquella parte que “comparece voluntariamente y realiza algún acto sustancial que la constituya parte en el pleito, se somete a la jurisdicción del tribunal”.(55) En esos casos, la comparecencia suple la omisión del emplazamiento y es suficiente para que el tribunal asuma jurisdicción.(56) Por otro lado, un tribunal no adquiere jurisdicción sobre un demandado que no ha sido emplazado por el mero hecho de que este se encuentre presente en la corte el día del juicio. (57)
En 1975 se añadieron varios artículos a la Ley de Reclamaciones y Demandas Contra el Estado(58) “a los fines de disponer sobre la representación legal y pago de demandas contra funcionarios, ex funcionarios, alcaldes, exalcaldes, empleados y ex empleados del Estado Libre *38 Asociado en determinados casos de violaciones de derechos civiles”.(59) En particular se estableció que:
[t]odo funcionario, ex funcionario, empleado o ex empleado del Estado Libre Asociado de Puerto Rico que sea demandado en daños y perjuicios en su carácter personal, cuando la causa de acción se base en alegadas violaciones a los derechos civiles del demandante, debido a actos u omisiones incurridos de buena fe, en el curso de su trabajo y dentro del marco de sus funciones, podrá solicitar que el Estado Libre Asociado de Puerto Rico le provea representación legal y posteriormente asuma el pago de cualquier sentencia que pueda recaer sobre su persona. (60)
Según la Exposición de Motivos de la Ley Núm. 9, las demandas que pueden presentarse por violación de derechos civiles “pueden radicarse no solamente contra instrumentalidades del Gobierno sino también contra funcionarios gubernamentales en su carácter personal, aun cuando las acciones motivo de la demanda se llevan a cabo en el estricto y legal cumplimiento de las obligaciones que le imponen las leyes que tienen la obligación de administrar”.(61) Por lo tanto, “[e]l Estado Libre Asociado de Puerto Rico reconoce que es de [sic] su obligación asumir cualquier responsabilidad de carácter económico con motivo de indemnizaciones impuestas por un tribunal con jurisdicción a cualquier funcionario o empleado público cuando esto ocurra como consecuencia de una acción administrativa tomada de buena fe, dentro de las disposiciones legales vigentes y dentro del marco de sus funciones”.(62) También indica la Exposición de Motivos que “ [e] 1 Estado Libre Asociado reconoce que es necesario proveerle a sus funcionarios y empleados la seguridad de que si actúan de acuerdo *39 a las normas vigentes y de buena fe, sus actuaciones han de ser respaldadas legal y económicamente por el Estado. De no adoptar esta directriz, graves serían las consecuencias para el reclutamiento y retención de personal de exclencia en el servicio público”.(63)
Hemos expresado que, por medio de este estatuto, “el Estado reconoció que existen instancias en las que funcionarios gubernamentales pueden ser demandados en su carácter personal”. (Énfasis suplido).(64) Por eso, para recibir los beneficios de la representación legal o el pago de la sentencia, hace falta que el funcionario o empleado sea demandado en su carácter personal y la causa de acción esté fundamentada en la alegación de violaciones a los derechos civiles del demandante por actos u omisiones del funcionario, que se hayan incurrido de buena fe en el curso de su trabajo y en el marco de sus funciones.(65) Además, para poder solicitar y obtener los beneficios de la Ley Núm. 9, el funcionario o empleado no debe tener disponibles los beneficios de la Ley de Reclamaciones y Demandas Contra el Estado.(66) En este sentido, el propósito de la Ley Núm. 9 es complementar la Ley de Reclamaciones y Demandas Contra el Estado y “proteger a los funcionarios y empleados públicos no cubiertos por [dicha] Ley”.(67) Cabe destacar que el que el Estado otorgue el beneficio de represen- *40 tación legal no conlleva, automáticamente, que habrá de pagar cualquier sentencia que en su día pueda recaer. Por eso, hemos reconocido que “el beneficio principal que pro-vee la Ley Núm. 9, supra, es la representación legal”.(68)
Una de las razones por las cuales la Asamblea Legisla-tiva adoptó estos beneficios para sus funcionarios y em-pleados es que el Estado Libre Asociado, distinto a sus fun-cionarios, no puede ser demandado directamente en el foro federal.(69) Ante el foro federal, el demandante presenta su causa de acción únicamente contra el funcionario en su ca-rácter personal y no contra el Estado propiamente.
Nuestro análisis de la Ley Núm. 9 confirma que la acción contra el Estado directamente y la acción contra sus funcionarios en su carácter personal son dos causas de acción separadas. (70) En la primera, el Estado figura como la parte demandada. En la segunda, el demandado es el funcionario en su carácter personal. A este se le concede el derecho a solicitar, como beneficio del empleo, que el Estado le brinde representación legal y, si no resulta victorioso, pague la sentencia que recaiga en su contra. Como explicamos, “no existe ningún impedimento para que la demanda se inste directamente contra el funcionario o empleado o, de forma alternativa, en contra del ELA y del funcionario o empleado, aunque no puede haber acumula- *41 ción de indemnizaciones”.(71) Por su parte, este beneficio de empleo no es un pago por servicios rendidos, sino “un gasto necesario para poder reclutar, retener y mantener una ad-ministración pública eficiente que sirva adecuadamente a los intereses del pueblo de Puerto Rico”.(72)
Para recibir los beneficios de la Ley Núm. 9, el funcionario o empleado debe seguir ciertos trámites que establecen el propio estatuto y el Reglamento sobre Representación Legal y Pago de Sentencia bajo la Ley de Reclamaciones y Demandas Contra el Estado.(73) Los beneficios no son automáticos, pues se requiere una solicitud fundamentada y una evaluación por parte del Secretario de Justicia.(74) Por eso, el primer trámite a cumplir es, precisamente, solicitar los beneficios al Secretario de Justicia, por escrito y antes de formular cualquier alegación responsiva, exponiendo los hechos ocurridos que dan paso a la demanda en su contra.(75)
En cuanto a la evaluación de la solicitud, le corresponde al Secretario de Justicia cerciorarse que esta contiene toda la información que requiere el Reglamento “para así deter-minar si el solicitante es elegible” para los beneficios de la Ley Núm. 9.(76) Acto seguido, el Secretario evaluará la solicitud en sus méritos y determinará si, en efecto, otorgará *42 los beneficios estatutarios.(77) En caso de que deniegue la solicitud, el Secretario deberá notificarlo e incluirá unas determinaciones de hechos y conclusiones de derecho; tam-bién advertirá al solicitante de su derecho a pedir reconsi-deración y recurrir en revisión judicial.(78) En todo caso, el Secretario tiene treinta días para notificar su decisión.(79)
Lo anterior indica claramente que cuando se demanda a un funcionario en su capacidad personal, el Estado no es parte del pleito, aunque le haya otorgado representación legal. El que el Estado asuma su representación es parte de un beneficio que reconoce la ley a los funcionarios como parte de una política pública para proteger a los empleados públicos que quedarían expuestos a ser demandados en su carácter personal por las acciones tomadas en el marco de sus funciones oficiales. Por lo tanto, la comparecencia del Estado Libre Asociado como representante legal de los funcionarios codemandados no constituye un acto sustancial que lo convierta en parte del pleito y no se puede concluir que al hacerlo el Estado se ha sometido voluntariamente a la jurisdicción del tribunal como parte independiente y separada de la persona del funcionario demandado.
Pero hay más. En el caso de autos, el Tribunal de Ape-laciones determinó que en el proceso de solicitud, evalua-ción y concesión del beneficio de la representación legal al amparo de la Ley Núm. 9 se cumple con el requisito de notificación al Secretario de Justicia sobre la existencia de un pleito contra el Estado Libre Asociado y que ello suple *43 la omisión de emplazamiento según la Regla 4.4(f). Para llegar a esta conclusión equivocada el foro apelativo recurrió a la Ley de Reclamaciones y Demandas Contra el Estado.(80)
Por vía de esta ley, la Asamblea Legislativa autorizó “demandar al Estado Libre Asociado de Puerto Rico en acciones por daños y perjuicios a la persona o a la propiedad causadas por acción u omisión de cualquier funcionario, agente, o empleado del Estado, o cualquier otra persona en capacidad oficial y dentro del marco de su función, cargo o empleo interviniendo culpa o negligencia”.(81) Este estatuto constituye una renuncia amplia, pero condicionada por parte del Estado a la protección que le brinda la inmunidad del soberano.(82) Entre esas condiciones está que la persona que tenga alguna reclamación contra el Estado tenga que notificar por escrito al Secretario de Justicia “haciendo constar, en forma clara y concisa, de la fecha, sitio, causa y naturaleza general del daño sufrido, los nombres y direcciones de sus testigos, y la dirección del recla-mante, así como el sitio donde recibió tratamiento médico en primera instancia”.(83) La ley requiere que esta notificación se entregue al Secretario de Justicia por correo certificado, mediante diligenciamiento personal, o en cualquier otra forma fehaciente reconocida en derecho en un término no mayor de noventa días siguientes a la fecha en que el reclamante tuvo conocimiento de los daños que reclama.(84)
La notificación al Secretario de Justicia que ordena la Ley de Reclamaciones y Demandas Contra el Estado no es un requisito de naturaleza jurisdiccional sino de *44 cumplimiento estricto y ha estado sujeta a una trayectoria liberalizadora.(85) Hemos resuelto que esa notificación puede hacerse tardíamente si existe justa causa.(86)
Según el demandante y el Tribunal de Apelaciones, el objetivo de notificar al Secretario de Justicia se cumplió, pues este recibió la petición de representación legal de los codemandados Marcucci y Burgos, la evaluó y, posterior-mente, otorgó los beneficios solicitados. Para ser conside-rada, esa petición tenía que incluir una relación detallada de los hechos en controversia, incluyendo un listado de los potenciales testigos. Por lo tanto, el foro apelativo concluyó que el proceso al amparo de la Ley de Reclamaciones y Demandas Contra el Estado subsanó la omisión de empla-zar al Secretario de Justicia como representante del ELA, según requiere la Regla 4.4(f) de Procedimiento Civil, supra.
Este análisis contiene una falacia estructural insubsanable, pues parte de una relación de identidad entre la notificación y el emplazamiento. Se trata de dos actos jurídicos de distinta naturaleza y propósitos y efectos distintos. Por eso, aunque el ELA hubiese sido debidamente notificado al amparo de la Ley de Reclamaciones y Demandas Contra el Estado, ello no equivaldría al emplazamiento requerido por la Regla 4.4(f) de Procedimiento Civil. No se cumple con la Regla 4.4(f) meramente notificando al Secretario de Justicia de la existencia de un pleito contra el Estado. Hace falta emplazarlo. Recordemos que el emplazamiento no tiene como único fin poner en aviso a una parte de la existencia de un pleito en su contra. Se trata de un mecanismo formal que dota al tribunal de la autoridad sobre la persona del demandado. Por vía del em- *45 plazamiento se advierte a la parte demandada que el tribunal ya tiene jurisdicción sobre su persona y que puede proceder en su contra según sea necesario.
En este caso no se emplazó al Secretario de Justicia según ordena la Regla 4.4(f) de Procedimiento Civil, el ELA no realizó acto sustancial alguno como parte en el li-tigio que permitiera concluir que se sometió voluntaria-mente a la jurisdicción del tribunal y la información que poseía el Secretario de Justicia no subsanó la falta de em-plazamiento formal que requiere nuestro ordenamiento procesal. Por ende, tenemos que resolver que no se obtuvo jurisdicción sobre la persona del Estado Libre Asociado de Puerto Rico.
III
El señor Cirino González demandó y emplazó al te-niente Marcucci y al sargento Burgos en su carácter oficial y personal. El Tribunal de Primera Instancia resolvió que el ELA era parte indispensable en este pleito y que, al no haberse emplazado al Estado adecuadamente, tenía que desestimar las demás causas de acción contra estos codemandados. Por su parte, el Tribunal de Apelaciones concluyó que había jurisdicción sobre el ELA y, por ello, era improcedente la desestimación de la causa de acción contra los codemandados. Hemos visto que el foro apelativo erró al concluir que, en efecto, había jurisdicción sobre el Estado. Nos resta resolver si el foro de instancia tenía ra-zón para concluir que el ELA es parte indispensable en esta controversia.
La Regla 16.1 de Procedimiento Civil de 2009 dispone, en lo pertinente, que “[l]as personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como de- *46 mandantes o demandados según corresponda”.(87) Una parte indispensable se define como “aquella que tiene tal interés en la cuestión envuelta en la controversia que no puede dictarse un decreto final entre las partes en la acción sin lesionar y afectar radicalmente su interés, o sin permitir que la controversia quede en tal estado que su determinación final haya de ser inconsistente con la equidad y una conciencia limpia”.(88) Se trata, como señalamos hace muchos años, de un ejercicio de consideración prag-mática de los intereses implicados.(89) El objetivo es, simplemente, evitar la multiplicidad de pleitos y los efectos perjudiciales que una sentencia adversa pudiera tener sobre la parte excluida en el caso.(90) Por eso, al referirse al “interés común” que da lugar a la acumulación, hemos re-suelto no se trata de cualquier interés en el pleito. Tiene que ser “de tal orden que impida la confección de un de-creto sin afectarlo”. (91)
Acorde a lo anterior, hemos optado por emplear un “enfoque práctico” en estos casos.(92) Así, no incluir a una parte indispensable es motivo para desestimar pero, a solicitud de parte interesada, el tribunal puede conceder la oportunidad de traer al pleito a la parte originalmente omitida, siempre y cuando el tribunal pueda asumir jurisdicción sobre ella.(93) En ese sentido, “[m]ientras esté presente *47 la posibilidad de traer a esa parte al pleito, no procederá la desestimación sino que se concederá la oportunidad de in-cluir a dicha parte en el proceso”.(94)
En la demanda contra los señores Marcucci y Burgos en su carácter oficial, es indiscutible que el ELA es parte indispensable. Cuando se demanda por daños y perjuicios a un funcionario en su carácter oficial, la verdadera parte con interés es el Estado, quien responderá al amparo de la Ley de Reclamaciones y Demandas Contra el Estado si se cumplen los requisitos de ese estatuto. Si permitiéramos la demanda contra Marcucci y Burgos en su carácter oficial sin la presencia del ELA, estaríamos exponiendo al Estado a una sentencia adversa que podría incluir daños pecuniarios que el Estado tendría que pagar. Por lo tanto, no puede continuar esa causa de acción sin la presencia de esta parte. Claro está, como mencionamos, nuestro ordenamiento procesal civil permite que se acumule a la parte indispensable omitida, de forma que no sea necesario desestimar la totalidad del pleito.
La situación es totalmente distinta en lo que se refiere a la demanda contra estos funcionarios en su carácter personal. Cuando se demanda a un funcionario en su carácter personal resulta evidente que el ELA no es una parte indispensable, pues no hay impedimento alguno para que se demande directamente al funcionario o empleado en su carácter personal omitiendo al Estado. Como adelantamos, en García v. E.L.A., 146 DPR 725 (1998), resolvimos que cuando se demanda al funcionario en su capacidad personal la demanda puede instarse directamente contra este o contra el ELA y el funcionario, aunque no se podrán acumular las indemnizaciones.(95) Precisamente, explicamos que para obtener los beneficios de la Ley Núm. 9, debe demandarse al funcionario en su carácter personal por vio- *48 laciones a los derechos civiles del demandante y no pueden estar disponibles los beneficios de la Ley de Reclamaciones y Demandas Contra el Estado. Por lo tanto, en esas cir-cunstancias la causa contra el funcionario y la causa de acción contra el Estado son dos causas de acción separa-das, de manera que si se demanda al funcionario en su capacidad personal, no hay obligación alguna de demandar al Estado. Lo que es más, si recae una sentencia monetaria contra los codemandados en su carácter personal, el ELA no responde automáticamente, sino que debe presentarse una petición a esos efectos. Presentada la petición, el Se-cretario de Justicia determinará si el ELA opta por pagarla. El ELA no es parte indispensable en estos casos. Por lo tanto, no puede desestimarse la causa de acción contra Marcucci y Burgos en su carácter personal por falta de parte indispensable, dado que estos fueron demandados y emplazados adecuadamente.
rv
Por último, nos corresponde atender la desestimación de la demanda con perjuicio contra los oficiales Medina Cotto y Acevedo Cotto, ordenada por el foro de instancia porque no fueron emplazados en el término dispuesto por la Regla 4.3(b) de Procedimiento Civil.
La nueva Regla 4.3(c) de Procedimiento Civil de 2009 dispone:
El emplazamiento será diligenciado en el término de ciento veinte (120) días a partir de la presentación de la demanda o de la fecha de expedición del emplazamiento por edicto. El Secretario o Secretaria deberá expedir los emplazamientos el mismo día en que se presenta la demanda. Si el Secretario o Secretaria no los expide el mismo día, el tiempo que demore será el mismo tiempo adicional que los tribunales otorgarán para diligenciar los emplazamientos una vez la parte deman-dante haya presentado de forma oportuna una solicitud de prórroga. Transcurrido dicho término sin que se haya diligen- *49 ciado el emplazamiento, el tribunal deberá dictar sentencia decretando la desestimación y archivo sin perjuicio. Una sub-siguiente desestimación y archivo por incumplimiento con el término aquí dispuesto tendrá el efecto de una adjudicación en los méritos.(96)
Si bien la aplicación de esta regla nos obligaría a orde-nar la desestimación sin perjuicio de la causa de acción contra Acevedo Cotto y Medina Cotto, entendemos que la alegación del señor Cirino González sobre la falta de noti-ficación del diligenciamiento negativo de los emplazamien-tos amerita nuestra consideración.
En Sánchez Rodríguez v. Adm. de Corrección, 177 DPR 714 (2009), nos topamos con una controversia similar a la de autos. En aquel entonces, un confinado demandó a la Administración de Corrección, por derecho propio e in forma pauperis, para solicitar daños y perjuicios por un alegado registro ilegal. Acto seguido, el tribunal de instan-cia ordenó al alguacil a diligenciar los emplazamientos. Tras percatarse de un problema con estos, el foro primario le ordenó a la Oficina del Alguacil regional que investigara y evidenciara que estos fueron diligenciados. No se notificó al demandante sobre el cumplimiento de esa orden.
Al relacionar la Regla 4.3(b) con la Regla 39.2(b) de Pro-cedimiento Civil que regula las desestimaciones por inac-tividad o dejadez, expresamos que ambas reglas “son me-canismos que tiene a su discreción el tribunal para darle fin a un caso que ha sido desatendido por un litigante”.(97) Tomando nota de que, en aquel entonces, en ambas cir-cunstancias se podía ordenar la desestimación de la de-manda con perjuicio, enfatizamos la necesidad de atempe-rar esas reglas a la política pública que favorece que los casos se ventilen en sus méritos. De igual forma, resalta-mos el interés y diligencia mostrados por el demandante en ese caso. Concluimos que difícilmente podía atribuirse *50 inactividad al demandante “cuando éste se encuentra confinado y el control del proceso está en manos del tribunal”.(98) También concluimos que, según la orden del Tribunal de Primera Instancia, el diligenciamiento corres-pondía al alguacil regional de Ponce, la orden estuvo casi dos años sin cumplirse y el demandante “nunca conoció el resultado de los trámites que hizo el Alguacil Regional de Ponce”.(99) Por lo tanto, resolvimos que no procedía la des-estimación como sanción.
En el caso de autos, surge del expediente y de las deci-siones de los foros inferiores que el diligenciamiento de los emplazamientos correspondientes a la demanda original y la primera demanda enmendada estaban a cargo del pro-pio Estado. Fue de esa forma que el señor Cirino González logró emplazar a la Administración de Corrección y a los codemandados Marcucci y Burgos, quienes aún fungían como empleados de la agencia. No se emplazó a los otros cocodemandados Acevedo Cotto y Medina Cotto porque ya no eran empleados públicos. Según alega el señor Cirino González, a él nunca se le notificó que no se había empla-zado a estos codemandados y no fue hasta que se dictó sen-tencia para desestimar con perjuicio la causa de acción contra los señores Acevedo Cotto y Medina Cotto que se enteró de ese hecho. Evidentemente, si nunca se le notificó del emplazamiento negativo, era razonable que el demandante confiara en que estos codemandados fueron, en efecto, em-plazados según ordenó el tribunal. Sin embargo, la alega-ción del señor Cirino González no ha sido objeto de prueba. Corresponde al Tribunal de Primera Instancia recibir la prueba que tenga a bien presentar el demandante y hacer las determinaciones de hechos correspondientes.(100)
*51 V
En vista de lo anterior, revocamos parcialmente la Sen-tencia del Tribunal de Apelaciones y resolvemos que no hay jurisdicción sobre la persona del Estado Libre Asociado, por lo cual procede la desestimación “sin perjuicio” de la demanda en su contra. De igual forma, procede la desesti-mación “sin perjuicio” de la causa de acción contra los co-demandados Marcucci, Burgos, Acevedo Cotto y Medina Cotto en su carácter oficial, por falta de parte indispensable.
Por otro lado, confirmamos la decisión del foro interme-dio que rechazó desestimar la causa de acción contra los codemandados Marcucci y Burgos en su carácter personal. Finalmente, referimos al Tribunal de Primera Instancia el asunto de la desestimación de la causa contra los codeman-dados Acevedo Cotto y Medina Cotto en su carácter personal, para que este dilucide si, en efecto, el demandante fue notificado del diligenciamiento negativo de sus emplazamientos. Se devuelve el caso al Tribunal de Pri-mera Instancia para la continuación de los procedimientos de forma compatible con esta opinión.

Se dictará Sentencia de conformidad.

 32 LPRA see. 3077 et seq.

 Estos son: teniente Frank Marcueci, sargento Ángel Burgos, y los oficiales de custodia Pedro Medina Cotto y José Acevedo Cotto.

 El 11 de agosto de 2005, el TPI intentó asignar la representación legal a la Corporación de Acción Civil y Educación, pero el 24 de enero de 2006 esa entidad notificó su decisión de no asumirla.

 En su alegato, la parte demandante recurrida informa que el diligencia-miento negativo de los codemandados Acevedo Cotto y Medina Cotto “no fue [ron] notificado [s] al Recurrido hasta la fecha de la Sentencia y aunque se dialogó con la Oficina de los Alguaciles sobre los emplazamientos en varias ocasiones con el Algua-cil Carlos Vélez a la ext. 2171 del Tribunal de San Juan”. Alegato de la parte recu-rrida, págs. 3-4. De igual forma, la parte recurrida sostiene que “dada la represen-tación de oficio, fue el propio ELA quien según solicitado e instruido por el Tribunal diligenció los emplazamientos”. Alegato de la parte recurrida, pág. 26. No hay cons-tancia en el expediente de los emplazamientos de ninguno de los codemandado.

 También se emplazó a la Sociedad Legal de Gananciales compuesta entre este y su esposa.

 El señor Medina Cotto fue destituido de su puesto el 22 de julio de 2007 y el señor Acevedo Cotto fue suspendido del suyo indefinidamente.

 No surge con claridad cuándo fue que el señor Burgos solicitó esos beneficios.

 Apéndice de la Petición de certiorari, pág. 144.

 Esta solicitud fue declarada “sin lugar” por el foro de instancia. Esta fue la primera comparecencia de los abogados del Estado Libre Asociado (ELA) en repre-sentación de los codemandados tras aprobarse la solicitud de estos al amparo de la Ley Núm. 9 (32 LPRA sec. 3085).

 (Énfasis suplido). Sentencia del Tribunal de Apelaciones, pág. 3; Apéndice petición de certiorari, pág. 5. El ELA alega que “con la excepción de una sola ocasión [...] la representación legal de los funcionarios ha sido distinta a la representación legal del ELA”. Petición de certiorari, pág. 6.

 El ELA también alegó falta de jurisdicción sobre la materia, repitiendo el argumento de que no se habían agotado los remedios administrativos, expuesto por los codemandados Marcucci y Burgos.

 Alegato de la parte recurrida, pág. 8.

 Sentencia del Tribunal de Primera Instancia, pág. 8; Apéndice de la Petición de certiorari, pág. 48.

 íd., pág. 7; Apéndice de la Petición de certiorari, pág. 47.

 De la sentencia no surge si la desestimación fue con o sin pequicio.

 Sentencia del Tribunal de Primera Instancia, pág. 9; Apéndice de la Petición de certiorari, pág. 49. Como adelantamos, la parte demandante arguye que se enteró por primera vez del diligenciamiento negativo en cuanto a los codemandados Medina Cotto y Acevedo Cotto por vía de la Sentencia del foro primario.

 La Sentencia del Tribunal de Apelaciones no indica si se refiere al inciso (í) o (g) de esa Regla de Procedimiento Civil.

 Sentencia del Tribunal de Apelaciones, pág. 17; Apéndice de la Petición de certiorari, pág. 19.

 Cabe destacar que en ningún momento el ELA ha alegado que se haya incumplido el término de noventa días para notificar al Secretario de Justicia según la Ley de Reclamaciones y Demandas Contra el Estado.

 Además, el foro apelativo destacó que los hechos alegados en la demanda original ocurrieron en un centro correccional y que la Administración de Corrección realizó una investigación sobre los sucesos en los que se vieron involucrados los oficiales correccionales codemandados. Sentencia del Tribunal de Apelaciones pág. 18; Apéndice de la Petición de certiorari, pág. 20.
En todo momento, el tribunal intermedio equiparó el requisito de notificación de la Ley de Reclamaciones y Demandas Contra el Estado con las normas de emplaza-miento establecidas en la Regla 4.4 de Procedimiento Civil y con la figura de la sumisión.

 Íd.

 Al así resolver, el foro intermedio no entró en los méritos de la alegación del demandante a los efectos de que nunca fue notificado del diligenciamiento negativo contra los codemandados Medina Cotto y Acevedo Cotto. Sin embargo, sí enfatizó en que el demandante Cirino González ha demostrado en todo momento que no se ha cruzado de brazos y que tiene interés en su demanda.

 (Énfasis suplido). Sentencia del Tribunal de Apelaciones, págs. 20-21; Apén-dice de la Petición de certiorari, págs. 22-23.

 El ELA señala que los errores de emplazamiento se dieron luego de que el demandante obtuviera representación legal, por lo que se torna irrelevante su esta-tus como confinado. Sin embargo, no cuestiona la determinación del Tribunal de Apelaciones a los efectos de que el diligenciamiento de los emplazamientos en este caso estaba a cargo del propio ELA.

 Petición de certiorari, pág. 11.

 Para ello, hace un análisis del proceso de solicitud, evaluación y otorgación de los beneficios bajo la Ley Núm. 9.

 En ese sentido, sostiene que la segunda y tercera demandas enmendadas fueron únicamente con el propósito de evitar la dilación y no un reconocimiento de que el tribunal aún no tenía jurisdicción sobre el ELA. Alegato de la parte recurrida, pág. 17.

 El recurrido también señala que el Estado “no levantó en momento alguno la falta de jurisdicción por no cumplir con los requisitos de notificación de la Ley Núm. 104, supra”. (Énfasis suplido). íd., pág. 18.

 Márquez v. Barreto, 143 DPR 137, 143 (1997).

 Banco Popular v. S.L.G. Negrón, 164 DPR 855, 863 (2005).

 Íd.; Global u. Salaam, 164 DPR 474, 480 (2005); Quiñones Román v. Cía. ABC, 152 DPR 367, 374 (2000).

 Banco Popular, supra, pág. 863. Véanse: Quiñones Román, supra, pág. 374; First Bank ofP.R. v. Inmob. Nac., Inc., 144 DPR 901 (1998).

5) Las Reglas de Procedimiento Civil de 2009 entraron en vigor el 1 de julio de 2010 (32 LPRA Ap. V, R. 74). En el presente caso, el Tribunal de Primera Instancia emitió sentencia y desestimó la demanda el 4 de noviembre de 2009 de acuerdo con las Reglas de Procedimiento Civil de 1979, mientras que el Tribunal de Apelaciones dictó sentencia y revocó al tribunal de instancia luego de la vigencia de las nuevas reglas.
En nuestro ordenamiento opera la retroactividad de las normas puramente procesales sin afectar el derecho sustantivo o material de las partes. R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal civil, 5ta ed., San Juan, Ed. LexisNexis, 2010, pág. 24. En numerosas ocasiones hemos expresado como principio rector al aplicar las reglas de procedimiento civil, que los tribunales debemos hacer un balance equitativo entre los intereses en conflicto para garantizar la solución justa, rápida y económica de la controversia. Lluch v. España Service Sta., 117 DPR 729, 742 (1986); Dávila v. Hosp. San Miguel, Inc., 117 DPR 807, 816 (1986); Isla Verde Rental v. García, 165 DPR 499, 507 (2005).
El Art. 3 del Código Civil, 31 LPRA see. 3, establece que “las leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario”. Ahora bien, sobre este principio hemos resuelto que si la retroactividad surge de la intención legislativa de forma expresa o tácita, debe aplicarse esa interpretación si esta es la más razonable según el propósito legislativo, sin que esto afecte los derechos adquiridos mediante la legislación anterior. Consejo Titulares v. Williams Hospitality, 168 DPR 101, 108 (2006); J.R.T. v. A.E.E., 133 DPR 1, 14 (1993). Por otro lado, recientemente expresamos que las normas de carácter procesal tienen efecto retroactivo y que debe aplicarse con preferencia ya que supone una “mayor protección de los derechos en litigio”. Clases A, B y C v. PRTC, 183 DPR 666, 680 (2011).

 Regla 4.4 de Procedimiento Civil de 2009 (32 LPRA Ap. V). Las Reglas de Procedimiento Civil de 2009 no alteraron, en lo pertinente, esta regla, por lo que recurrimos a la jurisprudencia interpretativa de la antigua Regla 4.4 de Procedi-miento Civil de 1979. Véase 32 LPRA Ap. III.

 Véase, además, Hernández Colón, op. cit., pág. 228.

 J.A. Echevarría Vargas, Procedimiento Civil puertorriqueño, San Juan, [ed. del autor], 2012, págs. 68-69.

 Fred y otros v. E.L.A., 150 DPR 599, 606 (2000); Hernández Colón, op. cit., págs. 228-229.

 Fred y otros, supra, págs. 606-607. Existen otros factores que deben analizarse para determinar si, en efecto, estamos ante una “instrumentalidad” o una agencia. Entre estos se encuentran la existencia de una junta de directores, su in-clusión en las leyes de personal del gobierno central y el grado de autonomía fiscal que posee la entidad. Véase Íd., págs. 605-606; Canchani v. C.R.U.V., 105 DPR 352, 255 (1976); Huertas v. Cía. Fomento Recreativo, 147 DPR 12, 20-22 (1998).
Nuestro análisis en Canchani, supra, es altamente ilustrativo. En esa ocasión, la Ley Orgánica de la Administración de Parques y Recreo Públicos creó esta como una agencia e “instrumentalidad”. Dado que la Administración no generaba sus pro-pios fondos, concluimos que no se trataba de una corporación pública. Por lo tanto, a pesar de que tenía personalidad jurídica propia, no aplicaba la Regla 4.4(e) de Pro-cedimiento Civil. Claro está, al tener personalidad jurídica, tampoco aplicaba la Regla 4.4(f). Tener personalidad jurídica propia sin generar sus propios ingresos la situaba en la Regla 4.4(g).

 Echevarría Vargas, op. cit., pág. 68.

 Íd.

 J.A. Cuevas Segarra, Tratado de derecho procesal civil, San Juan, Pubs. JTS, 2000, T. I, pág. 168.

 Véase Fred y Otros, supra, págs. 605-607, en referencia a Rivera Maldonado v. E.L.A., 119 DPR 74, 82 (1987). Véase, además, Cuevas Segarra, op. cit., pág. 168.

 Fred y otros, supra, pág. 605; Huertas, supra; Canchani v. C.R.U.V., 105 DPR 352 (1976); Cuevas Segarra, op. cit., pág. 168.

 Véase esc. 35.

 Véase nuestro análisis de las respectivas leyes orgánicas en Huertas, supra (Compañía de Fomento Recreativo); Fred y otros, supra (Departamento de la Vivienda); Canchani, supra (Administración de Parques y Recreo Públicos).

 Exposición de Motivos de la Ley Núm. 116 de 22 de julio de 1974 (1974 Leyes de Puerto Rico 535).

 Art. 3 de la Ley Núm. 116 (4 LPRA sec. 1103).

 Art. 1 del Plan de Reorganización Núm. 3 de 1993 (1993 Leyes de Puerto Rico 616).

 3 LPRA Ap. XVIII.

 Art. 4 del Plan de Reorganización Núm. 2 de 2011 (3 LPRA Ap. XVIII).

 Véase Arts. 5-7 del Plan de Reorganización Núm. 2 (3 LPRA Ap. XVIII).

 Hernández Colón, op. cit., págs. 221-222.

 Peña v. Warren, 162 DPR 764, 777 (2004).

 Íd., pág. 778.

 (Enfasis suplido). íd. Entre estos actos sustanciales están presentar alega-ciones sin plantear la falta de jurisdicción sobre la persona, cumplir voluntariamente con las órdenes del tribunal, entre otras. Véanse: Vázquez v. López, 160 DPR 714, 721 (2003); Qume Caribe, Inc. v. Srio. de Hacienda, 153 DPR 700, 711 (2001).

 Peña v. Warren, supra, pág. 778.

 Echevarría Vargas, op. cit, pág. 64.

 Ley Núm. 104 de 29 de junio de 1955 (32 LPRA sec. 3077 et seq.). En particular, la Ley Núm. 9 añadió los Arts. 12-19 y designó el Art. 12 original como el nuevo Art. 20.

 (Énfasis suplido). 1975 (Parte 2) Leyes de Puerto Rico 1043.

 (Énfasis suplido). Ley Núm. 9 de 26 de noviembre de 1975 (32 LPRA sec. 3085).

 (Énfasis suplido). Exposición de Motivos de la Ley Núm. 9, Leyes de Puerto Rico de 1975, supra, págs. 1043-1044.

 Íd., pág. 1044.

 (Énfasis suplido). íd. “Es obvio, que se hace necesario reclutar, retener y proteger servidores capacitados e idóneos que puedan actuar con libertad y tomar decisiones sin sentir presiones ni amenazas en contra de su patrimonio particular, lo cual sin lugar a dudas, causa una situación de gran desasosiego para él y su familia”, íd. Ahora bien, la Ley Núm. 9 establece que “lo aquí provisto no debe entenderse bajo ningún concepto como que convierte al Estado en asegurador de los servidores públicos antes señalados, ni que constituye una renuncia a la inmunidad soberana del Estado Libre Asociado”. 32 LPRA. sec. 3085.

 Torres Santiago v. Depto. Justicia, 181 DPR 969, 986-987 (2011).

 Íd., pág. 988. De igual forma, el estatuto excluye de sus beneficios aquellos actos u omisiones que sean constitutivos de delito, ocurran fuera del marco de sus funciones oficiales, medie negligencia inexcusable y cuando se haya establecido ju-risprudencialmente un estado de derecho diferente mediante sentencia final y firme. Íd.

 Ortiz et al. v. E.L.A., supra, págs. 70-71.

 García v. E.L.A., 146 DPR 725, 737 (1998).

 Ortiz et al. v. E.L.A. et al., 158 DPR 62, 71-72 (2002).

 Torres Santiago, supra, pág. 987; Ortiz et al., supra, pág. 75.

 “No siendo el Estado una persona natural, sólo puede actuar a través de sus funcionarios y empleados y, por ende, su responsabilidad es vicaria”. García v. E.L.A., supra, pág. 734. Claro está, eso se refiere a la propia responsabilidad del ELA bajo la Ley de Reclamaciones y Demandas Contra el Estado, no a la responsabilidad personal de los funcionarios y empleados que son demandados por violaciones a derechos civiles. Ahora bien, nuestro ordenamiento no mantiene una distinción ta-jante entre ambas causas de acción, pues la propia Ley de Reclamaciones y Deman-das Contra el Estado dispone que “[l]a sentencia que se dicte en cualquier acción autorizada por las sees. 3077 a 3092a de este título impedirá toda otra acción por parte del reclamante, por razón de la misma cuestión o materia, contra el funciona-rio, agente o empleado cuyo acto u omisión dio origen a la acción; y la sentencia contra el funcionario, agente o empleado impedirá igualmente toda acción contra el Estado”. 32 LPRA see. 3083.

 García v. E.L.A., supra, pág. 735.

 (Énfasis suplido). íd., págs. 737-738, citando al Informe Conjunto de las Comisiones de Gobierno y de lo Jurídico Civil sobre el P. del S. 1580 de 6 de noviembre de 1975, 7ma Asamblea Legislativa, 9na Sesión Extraordinaria, pág. 11.

 Reglamento Núm. 4071 sobre Representación Legal y Pago de Sentencia, Departamento de Justicia, 8 de septiembre de 1989.

 Se trata de una discreción limitada del Secretario de Justicia. Ortiz et al., supra, pág. 72.

 32 LPRA see. 3086. Los demás trámites y requisitos están contenidos en los artículos 5 y 6(B) del Reglamento Núm. 4071 e incluyen: una relación sucinta y concisa de la versión del solicitante sobre los hechos alegados en la demanda; firma y dirección del funcionario; nombre y dirección del organismo o dependencia guber-namental para la cual prestaba servicios y el puesto que allí ocupaba; dos copias de la demanda y el emplazamiento, y cualesquiera informes o documentos que el solicitante considere que apoyan su posición.

 Art. 7(A) y (B) del Reglamento Núm. 4071.

 32 LPRA sec. 3087.

 Art. 8(G) del Reglamento Núm. 4071.

 32 LPRA sec. 3087. Cabe señalar que el propio estatuto provee que “[a] fin de proteger los derechos del demandado de comparecer en tiempo al tribunal, el Secretario de Justicia podrá solicitar tiempo adicional para hacer una determinación respecto a la solicitud que se le hiciera”. (Énfasis suplido). Evidentemente, fue un error del Tribunal de Primera Instancia resolver que, hasta tanto el ELA asumiese la representación legal de los codemandados, no tenía derecho a solicitar prórroga en lo que decidía si, en efecto, asumiría tal representación.

 Ley Núm. 104 de 29 de junio de 1955, según enmendada, 32 LPRA sec. 3077 et seq.

 (Énfasis suplido). Galarza Soto v. E.L.A., 109 DPR 179, 181 (1979).

 García v. E.L.A., supra, pág. 734.

 32 LPRA sec. 3077a(a).

 32 LPRA secs. 3077a(b) y (c); Berríos Román v. E.L.A., 171 DPR 549, 557 (2007).

 Berríos Román, supra.

 Íd., pág. 558. Véanse, además: Rosario Mercado v. ELA, 189 DPR 561 (2013), y las opiniones de conformidad de la Jueza Asociada Pabón Charneco y el Juez Asociado Estrella Martínez en nuestra Sentencia en ELA v. Martínez Zayas, 188 DPR 749 (2013).

 32 LPRA Ap. V. Esta disposición no sufrió cambios al aprobarse las Reglas de Procedimiento Civil de 2009.

 Cuevas Segarra, op. cit., pág. 375, en referencia a Fuentes v. Tribl. de Distrito, 73 DPR 959, 981 (1951).

 Hernández Agosto v. López Nieves, 114 DPR 601, 606 (1983).

 De igual forma, esta figura está basada en dos axiomas: la protección cons-titucional que impide que persona alguna sea privada de la libertad y propiedad sin un debido proceso de ley, y la necesidad de incluir a una parte indispensable para que el decreto judicial emitido sea completo. Cepeda Torres v. García Ortiz, 132 DPR 698, 704 (1993).

 Hernández Agosto v. López Nieves, supra, pág. 607; Cuevas Segarra, op. cit., pág. 375. Véase Cepeda Torres v. García Ortiz, supra, pág. 705.

 Unisys v. Ramallo Brothers, 128 DPR 842, 859 (1991).

 Echevarría Vargas, op. cit., pág. 140.

 Íd.

 García v. E.L.A., supra, pág. 735.

 (Énfasis suplido). 32 LPRA Ap. V.

 Sánchez Rodríguez v. Adm. de Corrección, 177 DPR 714, 720-721 (2009).

 (Énfasis suplido). Íd.

 (Énfasis suplido). Íd., pág. 725.

 En su sentencia desestimatoria, el foro primario se limitó a desestimar con perjuicio la demanda contra estos codemandados por falta de emplazamiento y en ningún momento hizo determinaciones de hecho particulares sobre las razones para omisión. Sin duda, si se concluyera que el diligenciamiento de los emplazamientos *51 estuvo a cargo del Estado y que este no notificó adecuadamente al demandante sobre el diligenciamiento negativo, no procedería desestimar su causa de acción al amparo de la Regla 4.3(b). Sánchez Rodríguez, supra.